1

2

3

4

5

6

7

8    UNITED STATES DISTRICT COURT
     WESTERN DISTRICT OF WASHINGTON
9    AT TACOMA

10   DARRICK L. HUNTER,

11                   Plaintiff,              CASE NO. 3:18-cv-05198-BHS-JRC

12          v.                               REPORT AND RECOMMENDATION

13   CHARLES N. ROHRER, *et al.*,            NOTED FOR: May 10, 2019

14                   Defendants.

15

16          The District Court has referred this 42 U.S.C. § 1983 civil rights action to United States

17   Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and local

18   Magistrate Judge Rules MJR1, MJR3, and MJR4.

19          Plaintiff alleges that corrections officials violated the Fourteenth and First Amendments

20   when they targeted him and other prisoners on his institution's custodial crew for racially

21   motivated strip searches and that when plaintiff reported this behavior, the officials retaliated

22   against him.  Although plaintiff claims that he was targeted for strip searches because he is

23   African American, strip searches were required of all prisoners who were custodians in the

24

Extended Family Visit ("EFV") units because of a serious institutional problem with drug smuggling.  Because plaintiff has failed to present sufficient evidence to create a genuine issue of material fact on these claims or his retaliation or due process claims, defendants' motion for summary judgment should be granted.  This Court recommends that plaintiff's claims be dismissed with prejudice.

## BACKGROUND and PROCEDURAL HISTORY

Plaintiff, who is incarcerated at the Coyote Ridge Corrections Center (Dkt. 3, at 2) and who is proceeding *pro se* and *in forma pauperis* (*see* Dkt. 2), initiated this matter under § 1983 in March 2018.  Dkt. 1.   Plaintiff brings claims against various Department of Corrections ("DOC") officials who worked at the Stafford Creek Corrections Center ("SCCC")—Superintendent Margaret Gilbert, Sergeant Charles Rohrer, Sergeant Timothy McCandless, and Supervisor Keith Morgan—in their individual and official capacities.  Dkt. 3, at 1.

Plaintiff alleges that he was hired by an SCCC work training program, where he worked under Mark Sherwood, a custodial shop supervisor.  *See* Dkt. 3, at 4.  According to plaintiff, on at least eight occasions from March to September 2015, defendant Rohrer subjected plaintiff to nude strip searches after plaintiff had finished cleaning housing units.  *See* Dkt. 3, at 4–5. Plaintiff alleges that on the first occasion, he and two other prisoners—who he alleges were also "black offenders"—were subjected to these strip searches and that the next day, he overheard supervisor Sherwood say that defendants Rohrer and McCandless had asked Sherwood "'Why are you hiring all these blacks on your crew?'"  Dkt. 3, at 4.  Plaintiff allegedly heard that other SCCC shops hired "only white offenders, and that [defendants Rohrer and McCandless] didn't want blacks working in these positions."  Dkt. 3, at 5.

On January 20, 2016, plaintiff alleges that defendant Rohrer again strip searched him and that defendant McCandless gave plaintiff a lunch containing food items to which plaintiff was allergic.  Dkt. 3, at 6.  Plaintiff alleges that when he provided defendant Rohrer with a copy of his health status report to obtain a special diet meal, as directed, defendant Rohrer "just laughed at" plaintiff.  Dkt. 3, at 6.  Defendant Rohrer then confronted and suspended plaintiff, who said that he would grieve the matter and change job positions.  *See* Dkt. 3, at 7.

In January 2016, plaintiff was selected for a new position, in the chair shop program.  Dkt. 4, at 7.  He alleges that when defendant Rohrer learned of the transfer, he ordered supervisor Sherwood to suspend plaintiff as a security threat.  Dkt. 4, at 7.  When supervisor Sherwood refused, defendant Rohrer suspended plaintiff.  Dkt. 4, at 7.  Plaintiff filed a racial discrimination grievance against defendants Rohrer and McCandless and reported the incident.  Dkt. 4, at 8.  The Facility Risk Management Team ("FRMT") then permitted plaintiff to transfer to work at the chair shop, where defendant Morgan was a supervisor.  Dkt. 4, at 8.

Plaintiff alleges that defendant Rohrer directed defendant Morgan to terminate plaintiff from the chair shop program.  Dkt. 4, at 8–9.  According to plaintiff, "[i]t was determin[ed] that Rohrer and Morgan [were] prohibited from terminating" plaintiff, "that [plaintiff] would be closely monitored," and that "returning [plaintiff] to Sherwood[']s custodial crew was in [plaintiff's] best interest to allow Sherwood direct observation and supervision of Hunter."  Dkt. 4, at 9.  Plaintiff later filed a retaliation grievance against defendants Rohrer and Morgan, in addition to his earlier complaint of racial discrimination by defendant Rohrer.  Dkt. 4, at 9.

In June and July 2016, plaintiff alleges that defendant Rohrer directed at least five more nude strip searches of plaintiff and also that the workspaces of plaintiff and the other two prisoners who were initially strip-searched were "trashed at least four times by SCCC staff."

1    Dkt. 4, at 9–10.  Plaintiff claims that defendant Gilbert did not formally respond to any of his

2    grievances and that he transferred to another shop, where he remained until his transfer from

3    SCCC.  *See* Dkt. 4, at 10.

4         Plaintiff brings claims under the Fourteenth Amendment for racial discrimination by

5    defendants Rohrer, McCandless, and Morgan; under the First Amendment for grievance-related

6    retaliation by defendants Rohrer and Morgan; and under the Fourteenth Amendment for violation

7    of due process by defendant Gilbert.  *See* Dkt. 3, at 10–12.  Plaintiff requests compensatory and

8    punitive damages and declaratory and injunctive relief.  *See* Dkt. 3, at 2, 12.

9         Defendants moved for summary judgment on all of plaintiff's claims and provided him

10   with a *Rand* notice in February 2019.  *See* Dkts. 28, 36; *Rand v. Rowland*, 154 F.3d 952 (9th Cir.

11   1998).  Plaintiff filed a response (*see* Dkt. 37), and defendants filed a reply, including a motion

12   to strike.  *See* Dkt. 39.  Plaintiff has additionally filed objections to defendants' reply.  *See* Dkt.

13   41.

14

15                                **STANDARD OF REVIEW**

16        Summary judgment is appropriate "if the movant shows that there is no genuine dispute

17   as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

18   56(a).  "In ruling on a motion for summary judgment, '[t]he evidence of the nonmovant is to be

19   believed, and all justifiable inferences are to be drawn in [the nonmovant's] favor.'"  *Moldex-*

20   *Metric, Inc. v. McKeon Prods., Inc.*, 891 F.3d 878, 881 (9th Cir. 2018) (quoting *Anderson v.*

21   *Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).  Further, "'courts should construe liberally

22   motion papers and pleadings filed by *pro se* [prisoners] and should avoid applying summary

23   judgment rules strictly.'"  *Soto v. Sweetman*, 882 F.3d 865, 872 (9th Cir. 2018) (quoting *Thomas*

24

*v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010); *see also Blaisdell v. Frappiea*, 729 F.3d 1237, 1241 (9th Cir. 2013) (a court must not hold "missing or inaccurate legal terminology or muddled draftsmanship against" a *pro se* prisoner).  "This rule exempts *pro se* [prisoners] from *strict* compliance with the summary judgment rules, but it does not exempt them from *all* compliance." *Soto*, 882 F.2d at 872.

The moving party is entitled to summary judgment if the evidence produced by the parties permits only one conclusion.  *Anderson*, 477 U.S. at 251.  Where there is a complete failure of proof concerning an essential element of the nonmoving party's case on which the nonmoving party has the burden of proof, all other facts are rendered immaterial, and the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial."  *Sonner v. Schwabe N.A., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018).  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge[.]" *Anderson*, 477 U.S. at 255.  Nonetheless, the party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  And regarding materiality, a fact is only material if it "might affect the outcome of the suit under the governing [substantive] law[.]" *Anderson*, 477 U.S. at 248.

To show a genuine issue of material fact, a party must generally support that assertion by either "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence . . . of a genuine dispute, or that an adverse party cannot produce

1 | admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).  And although "[t]he court

2 | need consider only the cited materials," "it may consider other materials in the record."   Fed. R.

3 | Civ. P. 56(c)(3).  To the extent that plaintiff relies on conclusory statements, unsupported

4 | conjecture, and allegations based merely on belief, such are insufficient to create a genuine,

5 | material issue of fact.  *See Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir.

6 | 2003); *McElyea v. Babbitt*, 833 F.3d 196, 197–98 & n.1. (9th Cir. 1987) (per curiam).

7 |

8 | **DISCUSSION**

9 | **I.  Motion To Strike**

10 | As a preliminary matter, the Court addresses defendants' motion to strike various

11 | documents and statements that plaintiff relies upon in his summary judgment opposition.  *See*

12 | Dkt. 39, at 2.  An affidavit or declaration "must be made on personal knowledge, set out facts

13 | that would be admissible in evidence, and show that the affiant or declarant is competent to

14 | testify on the matters stated." Fed. R. Civ. P. 56(c)(4).  "A party may object that the material

15 | cited to support or dispute a fact cannot be presented in a form that would be admissible in

16 | evidence." Fed. R. Civ. P. 56(c)(2).

17 | Defendants argue that a number of the documents that plaintiff attaches to his declaration

18 | in support of his summary judgment opposition are inadmissible hearsay.  Plaintiff generally

19 | responds that the records fit within hearsay exceptions in Federal Rule of Evidence 803 for

20 | business records and for public records.  Dkt. 41, at 2.  However, none of the records at issue are

21 | admissible as business records because plaintiff has failed to provide the appropriate foundation

22 | by someone with knowledge about the record keeping.  *See* Fed. R. Evid. 803(6); *ABS Entm't v.*

23 | *CBS Corp.*, 908 F.3d 405, 426 (9th Cir. 2018).  Although plaintiff provides letters from the DOC

24 |

1    public records specialist and the assistant attorney general, these letters simply state that plaintiff

2    is being given the records and do not otherwise comply with Fed. R. Evid. 803(6).  *See* Dkt. 41-

3    1.

4           Under the public records exception, "[a] record or statement of a public office" is

5    admissible if it sets out the office's activities, a matter observed while under a legal duty to

6    report, or in a civil case, factual findings from a legally authorized investigation.  Fed. R. Evid.

7    803(8).  The Court will consider superintendent Sherwood's incident report and the grievances

8    submitted by plaintiff, to the extent that they set out DOC activities, matters observed by DOC

9    officials who are under a legal duty to report, and factual findings from a legally authorized

10   investigation.  Dkt. 38-1, at 16, 35, 46.  Defendants also rely on the same grievances in their

11   materials in support of summary judgment.  *See* Dkt. 34-1, at 5, 16.  The Court will also consider

12   an email from Ryan Denzer attached to plaintiff's opposition (*see* Dkt. 38-1, at 44) because that

13   email is also relied upon in defendants' summary judgment motion.  *See* Dkt. 31-1, at 16.

14          However, the Court finds that the balance of the challenged documents do not fit within

15   the public records exception.  Multiple purported interview summaries relied upon by plaintiff

16   (Dkt. 38-1, at 2 (Chris Idso), 18 (Jasper Harris), 21 (Eugene Tremble), 37 (Charles Rohrer))

17   contain no indication that they are DOC records or statements and hence are not admissible

18   under Fed. R. Evidence 803(8).  Moreover, the identity of the speakers is unclear in the

19   summaries, and two are unsigned and undated.  *See* Dkt. 38-1, at 22, 38.  Similarly, a letter

20   submitted with supervisor Sherwood's incident report appears to have been completed after the

21   incident report and does not include anything to support that it is a record or statement of any

22   particular public office.  *See* Dkt. 38-1, at 14–15.  Defendants' motion to strike the interview

23   summaries and letter attached with the Sherwood incident report is therefore granted.

24

The Court will also grant the motion to strike an email relied upon by plaintiff purportedly from defendant Rohrer to Chris Idso (*see* Dkt. 38-1, at 43), as it is unclear what the email refers to and it does not include any context.  Hence, it, too, does not meet the requirements of the public records exception, nor any other exception.

The Court will not strike plaintiff's statement in his declaration that defendants Rohrer and/or McCandless allegedly asked supervisor Sherwood "'why are you hiring all these blacks'" (*see* Dkt. 38, at 3), as the original statement could be admitted as a statement by a party opponent. *See Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) (the focus of a motion to strike at the summary judgment stage is the admissibility of the contents, not the form of the evidence).  Nor will the Court strike plaintiff's statement that "white and black offenders . . . told [him] that defendant McCandless shot and killed a black inmate, and that he didn't like blacks" (Dkt. 38, at 5), although the Court will consider this statement solely to the extent that plaintiff heard such a rumor and not for the truth of the matter asserted.


## II. Summary Judgment

### A. Equal Protection Claims

Plaintiff alleges that defendants Rohrer's, Morgan's, and McCandless's actions were motivated by racial discrimination and thus violated equal protection principles.  *See* Dkt. 3, at 11.  In their summary judgment motion, defendants argue that plaintiff has abandoned his equal protection claims against defendant Morgan and that there is no genuine issue of material fact regarding the claims against defendants Rohrer and McCandless.  *See* Dkt. 28, at 11–15.

In order to recover under 42 U.S.C. § 1983, a plaintiff must prove that (l) the conduct complained of was committed by a person acting under color of state law and that (2) the

conduct deprived a person of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds, Daniels v. Williams*, 474 U.S. 327 (1986).

### i. Equal Protection Principles

"'The Equal Protection Clause of the Fourteenth Amendment commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all person similarly situated should be treated alike.'" *Serrano v. Francis*, 345 F.3d 1071, 1081 (9th Cir. 2003) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (internal citation omitted)). The first step in equal protection analysis is to identify the classification of groups—those groups must be "comprised of similarly situated persons so that the factor motivating the alleged discrimination can be identified." *Thornton v. City of St. Helens*, 425 F.3d 1158, 1167 (9th Cir. 2005).

"To state a claim for violation of the Equal Protection Clause, a plaintiff must show that the defendant acted with an intent or purpose to discriminate against him based upon his membership in a protected class"—that is, plaintiff must show "'that a defendant acted at least in part *because of* a plaintiff's protected status.'" *Serrano*, 345 F.3d at 1082 (quoting *Maynard v. City of San Jose*, 37 F.3d 1396, 1404 (9th Cir. 1994) (citation omitted)). Where, as here, a defendant seeks summary judgment on such a claim, plaintiff "'must produce evidence sufficient to permit a reasonable trier of fact to find by a preponderance of the evidence that the decision was racially motivated.'" *Id.* (quoting *Bingham v. City of Manhattan Beach*, 329 F.3d 723, 732 (9th Cir. 2003) (citations omitted)).

*ii. Defendant Rohrer*

Defendants argue that plaintiff and other inmates who were strip searched were not similarly situated to those inmates who were not strip searched. *See* Dkt. 28, at 11–12. In support, defendants provide declarations explaining that the EFV units inside the "HUB" area of the prison are a particularly high-risk area for the movement of contraband and that in 2014—before plaintiff began working on the custodial crew—SCCC officials learned that drugs were entering the institution through the EFV units. Dkt. 29, at 2; *see* Dkt. 38, at 1. An investigator in the SCCC Intelligence and Investigations Unit specifically states that in 2014, that unit "received reliable intelligence that an offender on the custodial crew was then [in 2014] smuggling contraband from the EFV units, through the HUB, and into the facility." Dkt. 29, at 2–3.

An official, "Captain Davis," ordered an additional security measure to be implemented in light of the drug smuggling: strip searching custodial crew members after they had finished cleaning the EFV units. Dkt. 29, at 3; Dkt. 31, at 2. In November 2014, the facility manager, Chris Idso, emailed officials that offenders "working in the EFV[s] in a semi-supervised capacity will be strip searched when they are done. Semi-supervised means any offender that leaves the direct line of site of his/her supervisor. *Under this definition it will always mean the porter crews*." Dkt. 31-1, at 2 (emphasis added); *see also* Dkt. 38-1, at 41 (plaintiff was a "porter" on the custodial crew). The same day, defendant Rohrer sent an email stating that "all EFV cleaning crews will be searched before leaving the EFV unit being cleaned." Dkt. 31-1, at 4. He clarified the next day that this was to occur "after **each** unit has been cleaned" to avoid chances to smuggle contraband. Dkt. 31-1, at 5. Defendant Rohrer states that plaintiff was a member of the custodial crew who cleaned the EFV units and that accordingly, "the cleaning crew . . . was strip searched after they cleaned the EFVs." Dkt. 31, at 3.

1     This evidence supports that members of the cleaning crew—which had been identified as

2    smuggling drugs into the facility—were not similarly situated to other prisoners, who were not

3    implicated in the smuggling.  Plaintiff's summary judgment opposition comes forward with no

4    evidence to dispute that the custodial crew had specifically been implicated in the smuggling; nor

5    does plaintiff come forward with evidence that these steps were taken because of plaintiff's race.

6    *See* Dkt. 37, at 3.  As such, plaintiff fails to create a genuine issue of material fact on whether the

7    custodial crew was similarly situated to other prisoners who were not strip-searched.  Of course,

8    if plaintiff was searched because he was on the custodial crew, and not because he was African

9    American, then he would have no claim.

10     Plaintiff argues that the custodial crew, composed of himself and two other African-

11    American prisoners, stayed within the direct line of site of its supervisor, so that it was not

12    properly subjected to strip searches under the policy set forth by DOC officials.  *See* Dkt. 37, at

13    3.  Plaintiff also argues that other, white prisoners—prisoners who were not on the custodial

14    crew—worked in the EFV units on a regular and predictable basis, yet were not strip-searched.

15    *See* Dkt. 37, at 3.

16     These arguments fail to create a genuine issue of material fact because, as discussed

17    above, the evidence is undisputed that the custodial crew was, unlike other prisoner-workers,

18    specifically implicated in the smuggling.  Moreover, although plaintiff states that the custodial

19    crew did, in fact, stay within the direct line of site of their supervisor (*see* Dkt. 37, at 3), this

20    overlooks that the email from Chris Idso "conveying orders issued by captain davis" (*see* Dkt.

21    38, at 4), clarifies that the custodial crew will always be strip-searched.  *See* Dkts. 38-1, at 5; 41.

22    The email—upon which plaintiff relies—also controverts plaintiff's characterization that the way

23

24

1   that defendant Rohrer implemented the strip searches went beyond the orders given to him.  *See*

2   Dkt. 38, at 4.

3        The Court further notes that plaintiff's argument that he was treated differently than

4   other, white workers relies on the Sherwood letter and interview summaries—materials that are

5   stricken from the record.  *See* Dkt. 38-1, at 14–22.  Even if this Court did not strike these

6   materials from the record, the outcome would not differ, because these materials do not establish

7   that the custodial crew was similarly situated to the other offenders who were not searched.

8   Because defendants have provided undisputed evidence that the custodial crew was not similarly

9   situated to those who were not strip searched, summary judgment should be granted on

10  plaintiff's claim against Rohrer for a violation of equal protection.  *See Thornton*, 425 F.3d at

11  1167–68.

12                    *iii.  Defendant McCandless*

13       The parties dispute whether plaintiff has created a genuine issue of material fact that

14  defendant McCandless's act of confiscating plaintiff's gloves—but not those of another, white

15  prisoner—violated equal protection.  *See* Dkts. 28, at 14; 37, at 7.  Defendants assert that

16  plaintiff has failed to show that he was similarly situated to the other prisoner, who did not have

17  fingerless gloves, and that fingerless gloves both violated DOC policy and raised security

18  concerns.  *See* Dkt. 32, at 3.

19       In his summary judgment opposition, plaintiff relies on his declaration that his work

20  gloves did not have their fingers cut out and that defendant McCandless confiscated those

21  gloves, yet allowed plaintiff's white coworker—who had identical gloves—to keep the gloves.

22  *See* Dkt. 38, at 14–15.  This is flatly contradicted by plaintiff's deposition testimony, in which he

23  stated that he had cut out the fingers in his gloves in order to grab things.  *See* Dkt. 40-1, at 10–

24

1  11.  Plaintiff cannot create a genuine issue of disputed material fact by contradicting his own

2  previous testimony.  *See Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991).  As

3  such, the portion of his declaration that contradicts his deposition should be rejected, so that

4  plaintiff has failed to come forward with evidence from which a rational finder of fact could

5  conclude that plaintiff was treated differently to other, similarly situated prisoners on the basis of

6  his race regarding his gloves.  *Accord Ross v. City of Toppenish*, 104 Fed. Appx. 26, 28 (9th Cir.

7  July 15, 2004).

8  *iv.  Defendant Morgan*

9  Defendants argue that summary judgment in their favor is appropriate on plaintiff's claim

10  against defendant Morgan because plaintiff stated in his deposition that he was "not making a

11  separate racial discrimination claim against" defendant Morgan.  *See* Dkt. 30-1, at 25.  Plaintiff

12  does not respond.  Although plaintiff's complaint includes an allegation that defendant Morgan

13  violated plaintiff's equal protection rights, plaintiff's complaint contains nothing more than this

14  conclusory allegation to support that defendant Morgan took an adverse action against plaintiff

15  because of his race.  *See* Dkt. 3, at 8–9.  In light of plaintiff's abandonment of this claim and his

16  failure to provide anything more than a bare, conclusory allegation in his complaint to support

17  this claim, the Court recommends that summary judgment of plaintiff's equal protection claim

18  against defendant Morgan be granted.

19  *B.  Retaliation Claims*

20  *i.  Retaliation Principles*

21  Prisoners retain the First Amendment right to file prison grievances.  *See Entler v.*

22  *Gregoire*, 872 F.3d 1031, 1039 (9th Cir. 2017) (quoting *Rhodes v. Robinson*, 408 F.3d 559, 567

23  (9th Cir. 2005)).  The elements of a claim of retaliation are "'(1) . . . a state actor took some

24

1   adverse action against [plaintiff] (2) because of (3) [his] protected conduct, and . . . such action

2   (4) chilled [his] exercise of his First Amendment rights, and (5) the action did not reasonably

3   advance a legitimate correctional goal.'" *Id.* at 1040 (quoting *Rhodes*, 408 F.3d at 567–68).

4        "To raise a triable issue as to motive, [plaintiff] must offer 'either direct evidence of

5   retaliatory motive or at least one of three general types of circumstantial evidence [of that

6   motive].'" *McCollum v. Cal. Dep't of Corr. & Rehab.*, 647 F.3d 870, 882 (9th Cir. 2011)

7   (quoting *Allen v. Iranon*, 283 F.3d 1070, 1077 (9th Cir. 2002)).  The three general types of

8   circumstantial evidence of motive are temporal proximity, that the defendant expressed

9   opposition to the protected activity, or other evidence that the defendant's proffered reasons for

10   the adverse action were false and pretextual.  *See id.*  Simply asserting that the proffered reasons

11   were false, without providing supporting evidence, is insufficient.  *See id.* at 882–83.

12        The Ninth Circuit has made clear that to prevail on a claim of retaliation, a prisoner

13   plaintiff must "'plead[] and prov[e] the absence of legitimate correctional goals for the conduct

14   of which he complains.'"  *Bruce v. Ylst*, 351 F.3d 1283, 1289 (9th Cir. 2003) (quoting *Pratt v.*

15   *Rowland*, 65 F.3d 802, 806 (9th Cir. 1995)).  But "prison officials may not defeat a retaliation

16   claim on summary judgment simply by articulating a general justification for a neutral process,

17   when there is a genuine issue of material fact as to whether the action was taken in retaliation for

18   the exercise of a constitutional right."  *Id.*  Summary judgment is inappropriate where even if

19   there was a legitimate correctional goal, plaintiff raises a triable issue of fact on whether

20   defendants' actions were improperly motivated by retaliation, rather than the legitimate goal.

21   *See Shepard v. Quillen*, 840 F.3d 686, 692 n.7 (9th Cir. 2016).

22

23

24

1                           *ii.  Defendant Rohrer*

2       Plaintiff's allegations against defendant Rohrer raise multiple alleged instances of

3 retaliation:  ordering plaintiff back to his housing unit after plaintiff stated that he would file a

4 grievance following a confrontation with defendant Rohrer at lunch in January 2016 (*see* Dkt. 3,

5 at 6–7); suspending plaintiff from work after plaintiff reported the lunch incident, which resulted

6 in plaintiff filing a racial discrimination grievance (*see* Dkt. 3, at 7); ordering plaintiff terminated

7 from the chair shop program in April after plaintiff reported his suspension from work and filed

8 the racial discrimination grievance (*see* Dkt. 3, at 9); and ordering more strip searches after

9 plaintiff filed a retaliation grievance against defendants Morgan and Rohrer for terminating him

10 from the chair shop program (*see* Dkt. 3, at 10).

11       At the outset, the Court notes that plaintiff provides no evidence to create a genuine issue

12 of material fact that the first time that plaintiff filed—or threatened to file—a grievance was in

13 January, during the lunchtime confrontation.  *See* Dkts. 3, at 7, 38.  Thus summary judgment is

14 appropriate to the extent that plaintiff claims that he was retaliated against before he first

15 threatened to file a complaint.  Similarly, to the extent that plaintiff claims that it was retaliation

16 to continue to subject him to strip searches after he returned to the custodial crew, this continuing

17 course of conduct, which began before plaintiff threatened to file any grievances, fails as a

18 matter of law to establish retaliation because, as noted above, the undisputed evidence shows that

19 the reason for the continued practice of strip searches of the custodial crew servicing the EFV

20 units was to address the drug smuggling problem.

21       The Court also notes that although defendants characterize the first alleged instance of

22 protected conduct as occurring later, plaintiff alleges that he threatened to file a complaint and

23 lawsuit against defendant Rohrer after Rohrer made a racist comment during the lunchtime

24

1    incident in January 2016.  *See* Dkt. 38, at 8.  Because threatening to file a lawsuit is a protected

2    action, plaintiff has provided evidence to support that the first protected action occurred during

3    the lunchtime incident, which was before defendant Rohrer allegedly ordered plaintiff back to his

4    housing unit, suspended him, or ordered him to be terminated from the chair shop program.  *See*

5    *Entler v. Gregoire*, 872 F.3d 1031, 1043 (9th Cir. 2017).

6          Defendant Rohrer claims that plaintiff was acting disruptively in the lunchroom and

7    raised his voice after Rohrer asked plaintiff to step into the hallway.  *See* Dkt. 31, at 4.

8    Defendant Rohrer claims that he ordered plaintiff to return to his unit for the remainder of the

9    day because he believed that plaintiff had "become too upset and disruptive to continue

10   mainline."  Dkt. 31, at 4.  Following this incident, defendant Rohrer asserts that he learned of

11   two incidents on January 26 when plaintiff was "out of bounds" and on this basis, defendant

12   Rohrer informed staff of his concerns about plaintiff's behavior, leading to his suspension.  *See*

13   Dkt. 31, at 6–7.  Defendant Rohrer explained that after plaintiff was transferred to the chair shop,

14   defendant Rohrer learned of further misbehavior and again expressed his "continued safety and

15   security concerns" to staff.  Dkt. 31, at 7.

16         Because defendants have provided evidence that legitimate correctional goals motivated

17   defendant Rohrer's behavior, the burden shifts to plaintiff, the nonmoving party, to provide

18   evidence sufficient for a rational trier of fact to conclude that defendant Rohrer was motivated by

19   retaliation, not the legitimate goals, and that the proffered reason is pretextual.  *See Shepard*, 840

20   F.3d at 692 n.7.  Regarding being sent back to his housing unit after the lunchtime incident,

21   plaintiff simply asserts in his declaration that he was not being "escalating or disruptive" and did

22   not even discuss defendant Rohrer with his companions at the lunch table.  *See* Dkt. 38, at 7–8.

23   Not only is this bare contradiction, unsupported by any evidence, insufficient to create a genuine

24

1    issue of material fact (*see McCollum*, 647 F.3d at 882–83), but it is contradicted by plaintiff's

2    own deposition testimony that defendant Rohrer overheard plaintiff being upset and talking to

3    his friends about his encounter with Rohrer.  *See* Dkt. 40-1, at 8.  Plaintiff fails to create a

4    genuine issue of material fact on this point.

5           Regarding plaintiff's suspension from the custodial staff, plaintiff asserts that during the

6    first incident, he was working—delivering chemicals to the kitchen—when a kitchen official

7    discussed his diet lunch with her.  *See* Dkt. 38, at 9.  Regarding the second incident, he again

8    asserts that he was working—picking up custodial items—when he briefly spoke with an official

9    about working at a different job.  *See* Dkt. 38, at 9.  Plaintiff stated in his deposition that he was

10   not supposed to do anything other than "just . . . [his] job duties" when performing work duties

11   in other areas—such as the kitchen—but that he did not think that it "would be a big deal" to

12   discuss his diet issue with the kitchen official.  *See* Dkt. 30-1, at 14.  Plaintiff's own admission

13   that his access to areas was limited to that necessary to perform his work duties contradicts his

14   bare assertion that he was never out of bounds during his employment on the custodial staff and

15   that his behavior was always within expectations.  *See* Dkts. 37, at 6; 38-1, at 8.  As such, his

16   conclusory allegation that he was never "out of bounds" is insufficient to create a genuine issue

17   of material fact regarding whether defendant Rohrer's actions leading to plaintiff's suspension

18   from the custodial staff was related to plaintiff's being out-of-bounds, rather than as retaliation.

19          Plaintiff asserts that supervisor Sherwood stated that he "never had a problem with"

20   plaintiff's performance while on the custodial crew, despite defendant Rohrer's claim that

21   plaintiff had gone beyond the bounds of his work assignments.  *See* Dkt. 38, at 10.  Such is

22   consistent with defendants' evidence, which includes emails between defendant Rohrer and

23   supervisor Sherwood, in which defendant Rohrer asserted that plaintiff's behavior was

24

1  unacceptable.  *See* Dkt. 31-1, at 11.  The Court finds that even accepting as true that plaintiff's

2  custodial crew supervisor was satisfied with plaintiff's job performance during the relevant

3  period, such does not create a genuine issue of material fact here, where defendant Rohrer and

4  others expressed security concerns over plaintiff's behaviors.

5        Regarding plaintiff's termination from the chair shop program, defendants provide

6  evidence that defendant Morgan initially recommended the termination based on issues that

7  arose while plaintiff worked in the chair shop, including an incident where plaintiff brought his

8  lunch outside the HUB, allegedly without defendant Morgan's permission.  *See* Dkts. 33, at 3;

9  39, at 9.  According to defendant Rohrer, it was only in response to defendant Morgan's raising

10  the issue that defendant Rohrer emailed staff about his "continued safety and security concerns

11  regarding [plaintiff's] ongoing behavior."  Dkt. 31, at 7.  The email includes that defendant

12  Rohrer discussed how to "handle" plaintiff's issues with defendant Morgan and that Morgan

13  wanted to "just terminate him [plaintiff]."  Dkt. 31-1, at 17.  Defendant Rohrer expressed

14  concern about plaintiff's continued employment in the HUB.  *See* Dkt. 31, at 7.  Defendant

15  Morgan corroborates this account, claiming that he—not defendant Rohrer—wanted to have

16  plaintiff terminated from the chair shop for multiple issues, including lying about his lunch.  *See*

17  Dkt. 33, at 3.

18        In response, plaintiff simply asserts that defendant Rohrer was the impetus behind the

19  decision to terminate plaintiff from the chair shop and relies solely on his own conclusory

20  statements and a purported interview summary, which, as noted above, is stricken.  *See* Dkt. 38,

21  at 12.  As such, plaintiff fails to supply evidence from which a rational fact finder could

22  determine that defendant Rohrer ordered plaintiff to be terminated from the chair shop program

23  because of his racial discrimination complaint.

24

1

### iii.  Defendant Morgan

2          Defendants argue that plaintiff has failed to create a genuine issue of material of fact

3   regarding whether defendant Morgan retaliated against plaintiff because Morgan recommended

4   that plaintiff be terminated from the program on the basis of plaintiff's performance, not his

5   protected activity.  *See* Dkt. 28, at 16.  Plaintiff argues that defendant Morgan wanted plaintiff

6   removed from the chair shop because he "had filed a grievance with prison officials against

7   Rohrer."  *See* Dkt. 37, at 7.

8          Defendants provide evidence that defendant Morgan sought to have plaintiff terminated

9   from the chair shop on the basis of his poor performance and an incident where he lied about

10   having permission to bring his lunch out of the HUB facility.  *See* Dkt. 33, at 3.  Plaintiff's

11   conclusory assertions that defendant Morgan's statements about issues with other workers and

12   performance issues were "a cover-up" is insufficient to create a genuine issue of fact.  *See* Dkt.

13   38, at 10.

14          Viewed in the light most favorable to him, plaintiff's declaration does create a genuine

15   issue of fact regarding whether defendant Morgan told plaintiff that he could bring his lunch out

16   of the HUB facility.  *See* Dkt. 38, at 11–12.  Nonetheless, even taking as true plaintiff's assertion

17   that defendant Morgan lied when he said that he did not authorize plaintiff to take his lunch from

18   the facility, plaintiff fails to provide evidence from which a rational fact finder could conclude

19   that defendant Morgan did so in retaliation for plaintiff's filing a grievance against defendant

20   Rohrer.  None of the evidence that plaintiff relies on supports that defendant Rohrer discussed

21   plaintiff's grievance with defendant Morgan before April 11, when defendant Morgan alleges

22   that plaintiff lied about taking his lunch from the facility.  *See* Dkt. 37, at 7 (citing Dkts. 38, at

23   10–13; 38-1, at 37–38, 46).  Indeed, according to plaintiff's account, defendant Morgan learned

24

1  about plaintiff's grievance from plaintiff himself, not from defendant Rohrer, and defendant

2  Rohrer first spoke to defendant Morgan about taking action against plaintiff after defendant

3  Morgan had reported the incident.  *See* Dkts. 38, at 12; 38-1, at 38.  Thus even taking as true

4  plaintiff's evidence, he fails to create a genuine issue of material fact regarding whether

5  defendant Morgan's actions were motivated by retaliation for plaintiff filing a grievance against

6  defendant Rohrer.

7                              *C.  Due Process Claim*

8          Plaintiff alleges that defendant Gilbert's failure to respond to and resolve his grievances

9  violated due process.  *See* Dkt. 3, at 11.  Defendants argue that summary judgment is appropriate

10 because they have provided undisputed evidence that defendant Gilbert did investigate plaintiff's

11 claims.  *See* Dkt. 28, at 23.

12         Defendants provide evidence that in May 2016, defendant Gilbert assured plaintiff that

13 she would monitor and investigate the "situation" with defendants Rohrer and Morgan.  *See* Dkt.

14 34-1, at 5, 16.  In July 2016, defendant Gilbert wrote defendant Rohrer that an investigation into

15 allegations of staff misconduct filed against him had been closed.  *See* Dkt. 34-1, at 22.  Plaintiff

16 does not dispute these facts in his response to summary judgment.  *See* Dkt. 37, at 8.  As such,

17 plaintiff has failed to meet his burden to show a genuine issue of material fact and summary

18 judgment of his claim against defendant Gilbert should be granted.

19                              *D.  Other Claims*

20         Plaintiff's complaint briefly refers to a portion of Title VII of the Civil Rights Act of

21 1964 and, generally, "the laws of Washington State."  *See* Dkt. 3, at 1, 11.  Plaintiff does not

22 provide further explanation or support of any such claims elsewhere in his complaint or in his

23 summary judgment opposition materials.  In his responses to defendants' interrogatories, he

24

1   disclaimed any state law claims.  *See* Dkt. 30-1, at 5.  As such, this Court finds that plaintiff has

2   abandoned any claims under Title VII of the Civil Rights Act or Washington State law.

3         **III.  *In Forma Pauperis* Status on Appeal**

4         *In forma pauperis* status on appeal shall not be granted if the district court certifies

5   "before or after the notice of appeal is filed" "that the appeal is not taken in good faith[.]"  Fed.

6   R. App. P. 24(a)(3)(A); see also 28 U.S.C. § 1915(a)(3).  A plaintiff satisfies the "good faith"

7   requirement if he seeks review of an issue that is "not frivolous," and an appeal is frivolous

8   where it lacks any arguable basis in law or fact.  *Gardner v. Pogue*, 558 F.2d 548, 551 (9th Cir.

9   1977); *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

10         Regarding plaintiff's *in forma pauperis* status should plaintiff appeal, as noted, plaintiff

11   fails to create a genuine issue of material fact and moreover, his deposition testimony contradicts

12   several crucial aspects of his declaration submitted in opposition to defendants' summary

13   judgment motion.  As such, the undersigned recommends that plaintiff's *in forma pauperis* status

14   be revoked for purposes of any appeal.

15

16                                  **CONCLUSION**

17         The undersigned recommends that defendants' motion for summary judgment (Dkt. 28)

18   be **granted**; plaintiff's claims should be **dismissed with prejudice** and should he appeal, his *in*

19   *forma pauperis* status should be revoked.

20         Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

21   fourteen (14) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P.

22   6.  Failure to file objections will result in a waiver of those objections for purposes of *de novo*

23   review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a result in a waiver

24

of those objections for purposes of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted).  Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **May 10, 2019,** as noted in the caption.

Dated this 24th day of April, 2019.

J. Richard Creatura
United States Magistrate Judge