```
 1    UNITED STATES DISTRICT COURT
 2    WESTERN DISTRICT OF WASHINGTON
 3              AT TACOMA
 4
 5   DARRICK L. HUNTER,              CASE NO. 3:18-CV-05198-BHS-JRC
 6        PLAINTIFF,
 7        V.                         PLAINTIFF'S OBJECTIONS TO
 8   CHARLES N. ROHRER, ET AL.,      REPORT AND RECOMMENDATION
 9        DEFENDANTS.
10
```

11     COMES NOW, PLAINTIFF DARRICK L. HUNTER, PURSUANT TO
12 FEDERAL RULES OF CIVIL PROCEDURE (FRCP) RULE 72(b)(2)(3),
13 TO OBJECT TO MAGISTRATE JUDGE J. RICHARD CREATURA'S
14 REPORT AND RECOMMENDATION ENTERED AND DATED ON APRIL
15 25, 2019.
16     PLAINTIFF ALSO PETITIONS THE DISTRICT JUDGE TO RECEIVE
17 FURTHER EVIDENCE DUE TO A PHOTO COPYING ERROR.

                        I.
                 PLAINTIFF'S OBJECTION

20     MAGISTRATE JUDGE J. RICHARD CREATURA MISTAKENLY
21 CONCLUDED IN HIS REPORT AND RECOMMENDATION THAT PLAINTIFF'S
22 ALLEGATION (THAT HE WAS NEVER "OUT OF BOUNDS") IS INSUFFICIENT
23 TO CREATE A GENUINE ISSUE OF FACT REGARDING WHETHER
24 DEFENDANT ROHRER'S ACTIONS LEADING TO PLAINTIFF'S SUSPENSION
25 FROM THE CUSTODIAL CREW WAS RELATED TO PLAINTIFF'S BEING
26 OUT-OF-BOUNDS, RATHER THAN AS RETALIATION. SEE, DKT. 42,

<u>REPORT AND RECOMMENDATION, PAGE 17, LINES 5-18.</u>

IN SUPPORT OF THEIR MOTION FOR SUMMARY DEFENDANTS ARGUED THAT PLAINTIFF'S MISBEHAVIOR LED TO HIS SUSPENSIONS FROM THE CUSTODIAL CREW. SEE, <u>DKT. 28, DEFENDANTS MOTION FOR SUMMARY JUDGE, PAGE 6, LINES 23-24; PAGE 7, LINES 1-26; PAGE 8, LINES 1-5.</u> THE DEFENDANTS PRESENTED A DECLARATION FROM DEFENDANT ROHRER WHICH DEFINES BEING "OUT OF BOUNDS" AS MEANING THAT "AN OFFENDER IS IN AN AREA THAT OFFICERS AND STAFF DO NOT EXPECT OR ALLOW THEM TO BE." SEE, <u>DKT. 31, PAGE 5.</u> PLAINTIFF SENT SUFFICIENT EVIDENCE SHOWING THAT HE WAS NOT "OUT OF BOUNDS" BECAUSE HE WAS IN "<u>AN AREA</u>" THAT CORRECTIONS ALLOWED HIM TO BE IN. THERE'S NOTHING ON THE FACE OF THE RECORD TO INDICATE THAT "OUT OF BOUNDS" MEANS NOT HAVING DISCUSSIONS WITH STAFF WHILE ANY OFFENDER IS IN AN AREA THAT OFFICERS AND STAFF EXPECT OR ALLOW THE OFFENDER TO BE IN. (EMPHASIS ADDED)

MAGISTRATE CREATURA MISTAKENLY FAILED TO DETERMINE WHETHER PLAINTIFF WAS IN "AN AREA" THAT HE DIDN'T HAVE PERMISSION TO BE IN. PLAINTIFF HAS CREATED A GENUINE ISSUE OF FACT REGARDING WHETHER DEFENDANT ROHRER'S ACTION LEADING TO THE SUSPENSIONS FROM THE CUSTODIAL CREW WAS RELATED TO RETALIATION, RATHER THAN BEING OUT OF BOUNDS (BEING IN AN AREA THAT PLAINTIFF WAS NOT AUTHORIZED TO BE IN). A REASONABLE JURY COULD FIND THAT DEFENDANT ROHRER RETALIATED AGAINST PLAINTIFF. IT IS DISPUTED BY THE

parties whether plaintiff was in an area that D.O.C officers or staff did not expect or allow plaintiff to be in.

2.

## PLAINTIFF'S OBJECTION

Magistrate J. Richard Creatura mistakenly struck from the record exhibits presented by the plaintiff through the electronic filing (E-filing) court system. These exhibits were relevant to plaintiff's lawsuit and supported all his claims.

The defendants argued that a number of the exhibits attached to plaintiff's declaration in support of his summary judgment opposition are inadmissible hearsay. Magistrate Judge Creatura accepted only three (3) exhibits (#16, 35 and 46) and determined that the balance of plaintiff's sixty-two (62) documents do not fit within the business/public records exception. Multiple investigation interview statements of Chris Idso (Exhibit #1), Jaspes Harris (Exhibit #18), and Eugene Tremble (Exhibit #21) was offered by plaintiff in support of all his claims, including a departmental incident report completed by plaintiff's supervisor Mark Sherwood. Magistrate Judge Creatura determined that the investigation interview statements "contain no indication that they are DOC records of statements and hence are not admissible under Fed. R. Evidence 803(8)."

The plaintiff was "surprised" by this conclusion

because plaintiff has in his possession the "original" declaration with attached exhibits showing that:

A. Exhibit # 1 (a statement from Chris Idso) is signed with his signature and the statement contains a logo from the Department of Corrections indicating that it is a DOC record.

Exhibits # 18 (a statement from Jasper Harris), and Exhibit # 21 (a statement from Jasper Harris), also contains a DOC logo and signatures. The plaintiff was given multiple exhibits, double-sided with micro-print. The U.S. District Courts E-filing rules prohibits the filing of double-sided documents. All of plaintiff's double-sided documents were obtained through discovery from the defendants and are authentic DOC business/public records. Documents produced through discovery are deemed authenticated. See, <u>Maljack Prods., Inc. v Good Times Home Video Corp.</u>, 81 F.3d 881, 889 & n.12 (9th Cir. 1996); <u>Orr v. Bank of America</u>, 285 F.3d 764, 777 n.20 (9th Cir. 2002).

In attempting to file the micro-print double-sided exhibits as one larger page by e-filing, Mrs. Kleinbach, law library coordinator, mistakenly overlooked portions of plaintiff's original declaration with exhibits which should have been filed by e-filing. The exhibits provided to plaintiff were business/public records provided to plaintiff from the defendants DOC records.

PUBLIC RECORDS OFFICE, AND PLAINTIFF PROVIDED MAGISTRATE JUDGE CREATURA WITH LETTERS INDICATING THAT. THE DEFENDANTS HAVE NEVER CLAIMED THAT THE RECORDS FROM DOC'S PUBLIC RECORDS OFFICE ARE NOT WHAT THE PLAINTIFF PURPORTS THEM TO BE.

UNDER FRCP, RULE 72(b)(3) THE DISTRICT JUDGE HAS DISCRETION TO RECEIVE FURTHER EVIDENCE. DUE TO A E-FILING COPY ERROR, PLAINTIFF SEEKS PERMISSION FROM THE DISTRICT JUDGE TO RE-FILE BY E-FILING THE ORIGINAL DOCUMENTS AS IT RELATES TO EXHIBITS #1, #18 AND #21. PLAINTIFF CONCEDES THAT EXHIBIT #37 (A STATEMENT BY DEFENDANT ROHRER) IS NOT SIGNED, AND IS INADMISSIBLE.

AS TO THE REMAINING EXHIBITS, MAGISTRATE JUDGE CREATURE WRONGLY CONCLUDED THAT THEY DO NOT FIT UNDER THE PUBLIC RECORDS EXCEPTION. SEE, DKT. 42, PAGES 6-8.

3.

## PLAINTIFF'S OBJECTIONS

MAGISTRATE J. RICHARD CREATURA MISTAKENLY CONCLUDED IN HIS REPORT AND RECOMMENDATION THAT THE EVIDENCE SUPPORTS THAT "MEMBERS" (MORE THAN ONE MEMBER) OF THE CUSTODIAL CREW "HAD BEEN IDENTIFIED" AND "IMPLICATED IN THE SMUGGLING OF CONTRABAND. SEE, DKT. 42, PAGE 11, LINES 1-5. (EMPHASIS ADDED). THE SMUGGLING OF EITHER DRUGS OR CONTRABAND BY "AN OFFENDER" BACK IN 2014, HAD NOTHING TO DO WITH PLAINTIFF OR HIS TWO BLACK CO-WORKERS, AND THE SMUGGLING PREDATED PLAINTIFF'S EMPLOYMENT WITH THE 2015 CREW OF CUSTODIAL

workers.

It is a mistake to conclude that plaintiff was not similarly situated to other prisoner workers, who may or may not have existed back in 2014.

The defendants entire argument centers around the smuggling of contraband by one offender back in 2014, at a time where plaintiff was not even employed for custodial. The defendants have not presented any evidence to indicate that plaintiff was not similarly situated to prison workers employed on or after plaintiff's employment. It's uncertain which "other prisoners" the defendants are alleging that plaintiff is not similarly situated to. The defendants "other prisoner" argument in their motion for summary judgment is not specific or precise to allow Magistrate Judge Creatura to determine whether plaintiff was like prison workers employed during the time plaintiff was employed.

It is a mistake on the part of Magistrate Judge Creatura to suggest that the plaintiff has to come forth with evidence to dispute that the 2014 custodial "crew" had specifically been identified and implicated in the smuggling, when the evidence only supports that the smuggling predated plaintiff's 2015 employment, and the smuggling didn't involve the "crew", but "AN OFFENDER". SEE, DKT. 29,

PAGE 2, LINES 22-25. (EMPHASIS ADDED). THE PLAINTIFF HAS PRESENTED EVIDENCE SHOWING THAT HE WAS TREATED DIFFERENTLY FROM INDIVIDUALS WORKING IN THE EXTENDED FAMILY VISITATION (EFV) UNITS DURING THE TIME HE WAS EMPLOYED. THROUGHOUT PLAINTIFF'S LAWSUIT, THE DEFENDANTS HAS USED THE WORD "THE CUSTODIAL CREW" IN GENERAL TERMS, EVEN WHEN THE EVIDENCE ONLY POINTS TO "AN OFFENDER" IDENTIFIED OR INVOLVED IN THE SMUGGLING BACK IN 2014.

THE DEFENDANTS HAVE NOT PRESENTED ANY EVIDENCE IDENTIFYING OTHER OFFENDERS INVOLVED IN THE SMUGGLING, TO SUGGEST THAT THE "CREW" OR "MEMBERS" ASSIGNED TO CUSTODIAL, WAS THE ONLY "CREW" THAT ENTERED THE EFV'S REGULARLY TO WORK. THERE IS A DISPUTE BETWEEN THE PARTIES WHETHER THE CUSTODIAL CREW WAS "THE ONLY CREW" WITH REGULAR ACCESS TO THE EFV UNITS. SEE, DKT. 28, PAGE 12, LINES 15-25; DKT 38, DECLARATION OF DARRICK HUNTER, PAGE 2, PARAGRAPH 6. (EMPHASIS ADDED) PLAINTIFF'S EVIDENCE SHOWS THAT ONLY THE HVAC, BIKE AND CARPENTRY SHOPS WORKED IN THE EFV'S "AS NEED," AND THAT PLUMBING, LAWN/GARDENING, ELECTRICAL, METAL AND PAINT PORTER CREWS HAD REGULAR ACCESS TO THE EFV'S SIMILAR TO THE CUSTODIAL PORTER CREW.

MAGISTRATE JUDGE CREATURA MISTAKENLY OVERLOOKED THIS EVIDENCE. (EMPHASIS ADDED)

4.

PLAINTIFF'S OBJECTION

1  MAGISTRATE JUDGE J. RICHARD CREATURA MISTAKENLY
2  MISCONSTRUED EVIDENCE OFFERED BY PLAINTIFF IN SUPPORT
3  OF HIS CLAIMS. IN THEIR MOTION FOR SUMMARY JUDGMENT
4  THE DEFENDANTS HAD ARGUE THAT ALTHOUGH A SUPERVISOR IS WITH
5  THE CUSTODIAL CREW, THE SUPERVISOR MAY NOT ALWAYS BE ABLE
6  TO MAINTAIN A DIRECT LINE OF SIGHT ON EACH OFFENDER IN
7  THE CREW; THIS WOULD AFFORD AN OFFENDER ON THE WORK CREW
8  THE OPPORTUNITY TO RETRIEVE AND HIDE ON HIS PERSONS...
9  DRUGS OR OTHER CONTRABAND. SEE, DKT. 29, PAGE 4, LINES 13-17.
10     AT THE HEART OF THE PARTIES DISPUTE IS AN EMAIL
11  THAT WAS DRAFTED BACK IN 2014. SEE, DKT 38, DECLARATION
12  OF DARRICK HUNTER, PLAINTIFF'S EXHIBIT #2.
13     MAGISTRATE JUDGE CREATURA CONCLUDED THAT "ALTHOUGH
14  PLAINTIFF CLAIMS THAT HE WAS TARGETED FOR STRIP SEARCHES
15  BECAUSE HE IS AFRICAN AMERICAN, STRIP SEARCHES WERE
16  REQUIRED OF ALL PRISONERS WHO WERE CUSTODIANS IN THE
17  EXTENDED FAMILY VISIT ("EFV") UNITS BECAUSE OF A
18  SERIOUS INSTITUTIONAL PROBLEM WITH DRUG SMUGGLING."
19  SEE, DKT. 42, PAGES 1-2, ID. (EMPHASIS ADDED).
20     THE PLAINTIFF ARGUED THAT STRIP SEARCHES WERE
21  NOT REQUIRED FOR OFFENDERS WHO REMAIN UNDER THE
22  DIRECT SIGHT OF THEIR SUPERVISOR. DKT. 38, DECLARATION
23  OF DARRICK HUNTER, PAGES 3-4, PARAGRAPH 8.
24     A CAREFUL EXAMINATION OF THE EMAIL REVEALS
25  THAT "THE PORTER CREWS" (MORE THAN ONE CREW OF PORTERS)
26  WILL BE STRIP SEARCHED. THE TERM "PORTER CREWS"

indicates that Captain Davis' concern with drug or contraband smuggling reaches OTHER CREWS working inside the EFV's. Magistrate Judge Creatura mistakenly concluded that these security concerns applied only to the custodial crew. The term "Porter CREWS" contradicts defendants entire EFV unit arguments. (EMPHASIS ADDED)

The mistakes made by Magistrate Judge Creatura affected the whole outcome of plaintiff's lawsuit.

## CONCLUSION

The plaintiff asks the district judge to review the mistakes made by Magistrate Judge Creatura.

Further, plaintiff asks the district judge to allow further evidence, to permit the filing AGAIN of the exhibits attached to plaintiff's original declaration.

Dated this 09th day of May 2019. D.H.

I, Darrick Hunter declare under the penalty of perjury that I have personal knowledge of the information contained in this objection, and that the foregoing is true and correct.

Dated this 09th day of May 2019. D.H.

## CERTIFICATE OF SERVICE

I, hereby certify that on May 09, 2019, I filed by e-file plaintiff's objection to report and recommendation to defendants and the courts.

Dated this 09th day of May 2019

D.H.
DARRICK HUNTER

PLAINTIFF'S FURTHER EVIDENCE SHOWS:

(1) THAT EXHIBIT #1 (INTERVIEW SUMMARY OF CHRIS IDSO) HAS DOC LOGO WITH SIGNATURES, WHICH WAS INITIALLY PHOTOCOPIED AS A DOUBLE-SIDED DOCUMENT. THIS IS A STATEMENT FROM IDSO

(2) THAT EXHIBITS #18 AND #21 (INTERVIEW SUMMARIES OF HARRIS AND TREMBLE) HAS A DOC LOGO WITH SIGNATURES, WHICH WAS INITIALLY PHOTOCOPIED AS A DOUBLE-SIDED DOCUMENT. THESE ARE STATEMENTS FROM HARRIS AND TREMBLE.

PLAINTIFF'S
EXHIBIT 1

# Department of Corrections
## WASHINGTON STATE

**INTERVIEW ACKNOWLEDGMENT**

Case Identification Number: _____    Date of Interview: 6/28/16

Name and Title of Interviewee: Chris Idso
(Include Title or DOC # and Housing Assignment as applicable)

Appointing Authority: Margaret Gilbert

As an interviewee, I have been informed of the circumstances under which the Department of Corrections releases information. By signing this form, I acknowledge that I have been informed that the information I provide, including my identity, may be subject to release by the Department pursuant to applicable collective bargaining agreements, RCW 42.56 (The Public Records Act), court order, subpoena, and/or other legal authority.

I understand that information related to allegations/incidents of sexual misconduct will only be disclosed to staff when necessary for related treatment, investigation, and other security and management decisions. Breaches of confidentiality may be subject to corrective/disciplinary action.

The Department prohibits retaliation against any person because of his/her involvement in the reporting or investigation of a complaint. The Department will treat retaliation as a separate offense subject to investigative, administrative sanctions, and prosecution. Any concerns regarding retaliation are to be reported to the Appointing Authority.

☐ **Offender**
I understand that this is an active and ongoing investigation. In order to protect the integrity of the investigation, I understand that discussion of any related information is to be limited only to persons who have a need to know.

☒ **Employee/Contract Staff/Volunteer**
I have been advised this interview is for internal administrative purposes only. I understand that refusing to cooperate with the investigation may result in me being disciplined for insubordination, up to and including termination of employment/ volunteer service or the termination of my contract. I acknowledge that I am being required to fully and honestly answer all relevant and material questions relating to my duties/assignment, and that my answers cannot be used against me in any subsequent criminal proceeding.

I have been further advised that this is an active and ongoing investigation and that I may not discuss it with anyone except the Appointing Authority or a Human Resources professional, union representative, legal counsel, or person with whom I have a legally privileged relationship.

☐ **Other**
My participation in this interview is voluntary, and I understand that I am free to leave at any time. I have been advised that a witness of my choosing can accompany me during the interview at my request. Based on this information, I consent to participate in this interview.

_____    6-28-16
Interviewee Signature              Date

    6-28-16
Investigator Signature             Date

Distribution: ORIGINAL – Final Investigation Report

DOC 03-494 (Rev. 02/18/16)    DOC 490.860, DOC 850.010

Hunter v. Rohrer, et al
DEFS 000218

*Exhibit 4*

---

**INTERVIEW SUMMARY**

Case Number: N/A
Interviewee Name: Chris Idso
Investigator Name: Stella Jennings
Interview Date: 6/01/16
Interview Location: H2 CUS

The allegations were read to Chris Idso.

**What can you tell me about the allegations?**

1) Do you know which work crews get stripped searched after they complete work inside the EFV's?
It was my understanding that the procedure would be set up for the custodial crew to be strip searched simply because there is so much activity amongst Mark's crew because they spread out and aren't directly supervised most of the time. The other crews that go into the EFV's are specifically going to one area for example the kitchen area and all of the members of the crew would stay in that one area where they could be easily supervised. Mark's crew would spread out and go all over the entire EFV and they couldn't be directly supervised, which made it difficult for Mark to see them all at the same time.

2) How long has the practice been happening?
Two or three years, it has been going on since Mark got there. There was a true connection of contraband being brought into the institution it began as a result of a IIU investigation for contraband before Mark was in the position.

3) Did you send out a written notice/email to the crew bosses? I will look. Yes I did.

4) Or was a verbal directive given to the crew bosses to strip out offenders on their crew? Which crew bosses was this direction given to?
It was an agreement with Rohrer and the Lt group. Rohrer was always pretty hard on the custodial crews that worked in the EFV's. If they feel that it is necessary, then a strip would be conducted.

5) If they are stripped out where are they stripped out at?
Officer Sumait is called to the EFV's, strips are done inside, not sure exactly where.

6) Have you heard anyone call Marks's crew Sherfood?
No, I have not.
7) Have you ever asked Mark or heard anyone ask Mark, why was he hiring all these black guys, or what's up with all the black guys?

Hunter v. Rohrer, et al
DEFS 000219

*4a*

Yes from Mark only, no one else. I have never said anything about it Marty or I could care less who is hired.
8) Did you ever tell Mark that he was making you look good because he had hired all black guys on his crew?
There were some allegations that CI and Maintenance were only hiring white guys. The Supt requested our crew lists detailing the diversity. When I reviewed the list, the shops with more diversity were custodial, recycle, paint shop, and the grounds crew. I shared my appreciation with some of those supervisors simply because they were the reasons we showed good diversity in the building. It was nothing more than that. If the person qualifies they get the job. There is a policy, CI worker policy 710.400 states there will be diversity. Racial profile must match the population of the facility. This policy does not apply to our class III workers, but since we employ over 100 offenders, it makes sense to try and follow it.
9) Is there anything that I should have asked that I haven't?
No.

I attest the above statements are true and accurate to the best of my knowledge.

Interviewee Signature: _____  Date: 6-28-16

Hunter v. Rohrer, et al
DEFS 000220

---

Jennings, Stella R. (DOC)

| | |
|---|---|
| From: | Idso, Chris L. (DOC) |
| Sent: | Tuesday, June 28, 2016 3:32 PM |
| To: | Jennings, Stella R. (DOC) |
| Subject: | FW: EFV cleaning |

Another email from Chuck Rohrer.

From: Rohrer, Charles N. (DOC)
Sent: Wednesday, November 05, 2014, 2:50 PM
To: Sherwood, Mark A. (DOC) <masherwood@DOC1.WA.GOV>; McCandless, Timothy J. (DOC) <tjmccandless@DOC1.WA.GOV>; Arnold, Robert A. (DOC) <RAArnold@DOC1.WA.GOV>; Christenson, Lanny A. (DOC) <LAChristenson@DOC1.WA.GOV>; Doran, William K. (DOC) <wkdoran@DOC1.WA.GOV>; Sumalt, Roque D. (DOC) <RDSumalt@DOC1.WA.GOV>
Cc: Williams, Martin A. (DOC) <mawilliams2@DOC1.WA.GOV>; Idso, Chris L. (DOC) <clidso@DOC1.WA.GOV>
Subject: EFV cleaning

Now that we will be doing strip outs of the offenders cleaning the EFVs, this is how I think it should be done.

1. All the offenders will have to be stripped out after each unit has been cleaned. If they are allowed to go outside for whatever reason, then they can toss or drop off whatever contraband without us knowing it. Kind of defeats the purpose.
2. A blue shirt will perform the strip search itself. If possible I would like the supervisor to be the 2nd staff required to do the strip but only have a visual on the blue shirt that is doing it. This could save time when staff may be on escort.
3. We have 2 Sgt's and 2 officers available most of the time in the mornings and after 1230hr we have a 3rd officer.

I think this should cover the basics. I am sure I have missed something and we will need to adjust as needed. I think the biggest thing is once the offender has enter what could be a contaminated area they are not allowed to exit for any reason. I am sure this is going to slow down the overall process, but we will try to minimize that as much as we can.

Hunter v. Rohrer, et al
DEFS 000221

PLAINTIFF'S
EXHIBIT 5

[Handwritten: Exhibit 9]

## Page 1 (rotated)



**Department of Corrections — WASHINGTON STATE**

# INTERVIEW ACKNOWLEDGMENT

Case Identification Number: _____  Date of Interview: 6/01/16

Name and Title of Interviewee: HARRIS, Jasper Andr (812391)
(include Title or DOC # and Housing Assignment as applicable)

Appointing Authority: Margaret Gilbert

As an interviewee, I have been informed of the circumstances under which the Department of Corrections releases information. By signing this form, I acknowledge that I have been informed that the information I provide, including my identity, may be subject to release by the Department pursuant to applicable collective bargaining agreements, RCW 42.56 (The Public Records Act), court order, subpoena, and/or other legal authority.

I understand that information related to allegations/incidents of sexual misconduct will only be disclosed to staff when necessary for related treatment, investigation, and other security and management decisions. Breaches of confidentiality may be subject to corrective/disciplinary action.

The Department prohibits retaliation against any person because of his/her involvement in the reporting or investigation of a complaint. The Department will treat retaliation as a separate offense subject to investigative, administrative sanctions, and prosecution. Any concerns regarding retaliation are to be reported to the Appointing Authority.

☒ **Offender**
I understand that this is an active and ongoing investigation. In order to protect the integrity of the investigation, I understand that discussion of any related information is to be limited only to persons who have a need to know.

☐ **Employee/Contract Staff/Volunteer**
I have been advised this interview is for internal administrative purposes only. I understand that refusing to cooperate with the investigation may result in me being disciplined for insubordination, up to and including termination of employment/ volunteer service or the termination of my contract. I acknowledge that I am being required to fully and honestly answer all relevant and material questions relating to my duties/assignment, and that my answers cannot be used against me in any subsequent criminal proceeding.

I have been further advised that this is an active and ongoing investigation and that I may not discuss it with anyone except the Appointing Authority or a Human Resources professional, union representative, legal counsel, or person with whom I have a legally privileged relationship.

☐ **Other**
My participation in this interview is voluntary, and I understand that I am free to leave at any time. I have been advised that a witness of my choosing can accompany me during the interview at my request. Based on this information, I consent to participate in this interview.

_[signature]_  6-1-16
Interviewee Signature  Date

_[signature] Willa Jennings_  6-1-16
Investigator Signature  Date

Distribution: ORIGINAL – Final Investigation Report
DOC 03-484 (Rev. 02/18/16)  DOC 490.880, DOC 850.010

Hunter v. Rohrer, et al
DEFS 000331

---

**Department of Corrections — WASHINGTON STATE**

# INTERVIEW ACKNOWLEDGMENT

Case Identification Number: N/A  Date of Interview: 5/25/16

Name and Title of Interviewee: Tremble, Eugene 716871
(include Title or DOC # and Housing Assignment as applicable)

Appointing Authority: Margaret Gilbert

As an interviewee, I have been informed of the circumstances under which the Department of Corrections releases information. By signing this form, I acknowledge that I have been informed that the information I provide, including my identity, may be subject to release by the Department pursuant to applicable collective bargaining agreements, RCW 42.56 (The Public Records Act), court order, subpoena, and/or other legal authority.

I understand that information related to allegations/incidents of sexual misconduct will only be disclosed to staff when necessary for related treatment, investigation, and other security and management decisions. Breaches of confidentiality may be subject to corrective/disciplinary action.

The Department prohibits retaliation against any person because of his/her involvement in the reporting or investigation of a complaint. The Department will treat retaliation as a separate offense subject to investigative, administrative sanctions, and prosecution. Any concerns regarding retaliation are to be reported to the Appointing Authority.

☒ **Offender**
I understand that this is an active and ongoing investigation. In order to protect the integrity of the investigation, I understand that discussion of any related information is to be limited only to persons who have a need to know.

☐ **Employee/Contract Staff/Volunteer**
I have been advised this interview is for internal administrative purposes only. I understand that refusing to cooperate with the investigation may result in me being disciplined for insubordination, up to and including termination of employment/ volunteer service or the termination of my contract. I acknowledge that I am being required to fully and honestly answer all relevant and material questions relating to my duties/assignment, and that my answers cannot be used against me in any subsequent criminal proceeding.

I have been further advised that this is an active and ongoing investigation and that I may not discuss it with anyone except the Appointing Authority or a Human Resources professional, union representative, legal counsel, or person with whom I have a legally privileged relationship.

☐ **Other**
My participation in this interview is voluntary, and I understand that I am free to leave at any time. I have been advised that a witness of my choosing can accompany me during the interview at my request. Based on this information, I consent to participate in this interview.

_Eugene Tremble_  5-25-16
Interviewee Signature  Date

_[signature] Willa Jennings_  5-25-16
Investigator Signature  Date

Distribution: ORIGINAL – Final Investigation Report
DOC 03-484 (Rev. 02/18/16)  DOC 490.880, DOC 850.010

Hunter v. Rohrer, et al
DEFS 000334

## INTERVIEW SUMMARY

Case Number: N/A
Interviewee Name: Harris, Jasper 812391
Investigator Name: Stella Jennings
Interview Date: 6/01/16
Interview Location: H2 CUS

The allegations were read to Harris.
What can you tell me about the allegations?
They stated "why do you keep hiring all these black guys?" Remember when I had that hearing about Koski, McCandless stated to Sherwood "why are you hiring him back when I was never fired"
I also heard McCandless and Rohrer talking aobut Hunter, they thought that Hunter was trying to get over on them over some chips. I heard them say we don't want his "black ass out here anyway". He said this about Hunter, it was over a bag of chips.
They have been targeting Hunter a lot and they have it out for me also.
The sun glasses, every other shop has sunglasses and even to this day they still wear them, but they took ours away. Paul was the safety guy he was the one that authorized them. McCandless went to Idso and they got taken away.
What have they been doing to Hunter? It started over the chips, and then it was small stuff. He had a call out one day and he brought his lunch with him and he got in trouble for that, then they suspended him for going to the back dock. All of this is Rohrer. Then Hunter went to CI and he got suspended out there also. They always look at him mean. I try to stay out of their way.
We always get stripped searched when we clean the EFV's. Where do they strip you out? In the bathroom in the EFV's. We are the only ones that get stripped searched when we clean the EFV's no other crew does.
Do you notice if the staff is documenting the strip search? He notes it on a little pad, he lets the HUB officer know and he logs it somewhere. They do that so we don't get stripped search twice.
Have you ever heard your crew called Sherhood? Ya, other inmates but I don't know where they got it from.
Sherwood just picks people who he knows is giong to work, he doesn't hire any particular race even though that is what they are making it look like. He goes off a list fom McCormick.
How long have you been working in V building? one year and a half.
Can you recall how many black offenders there were? There were just me an Tremble working in the back. Now they have more, 2 recycle, 1 in plumbing, 1 in the metal shop, 1 in carpentry, now Alexander is with us. HVAC, electric and construction don't have any black offenders. But construction has minorities.
This change has been within about three or four months It started changing after I got in, December 2014. In March of 2015 I noticed they started hiring more blacks.
They make comments like why are they brinnging these guys back.

Mallot used to make smart comments. Like you keep bringing these "black guys back" he said this while another offender was nearby and he overheard it. He worked in CI.
I used to tell Hunter to be careful because they were out to get him.
Sherwood is the one that told me, that Rohrer told him why did you bring Harris back after my infraction hearing.
I know McCandless for sure said why are hiring all these black guys", he told us he said it.
I heard that McCandless killed a black guy at Walla Walla in the early 2000's just rumors from other offenders who were there.
What else you want to tell me?
Were you a witness to Hunter being pulled out of the kitchen? Yes we all sit together. Rohrer said that he lied about his diet. He pulled him in the hallway and said he lied about his diet. Hunter brought his HSR back to show him. Rohrer brought him back to the hallway and they were getting loud. You lying! He kept saying that.
Do your carts get searched each time you leave or enter through the HUB more than other work crews? Yes I would say so. Then it depends on who is there if it regular staff like Veal and Bravos, yes. Sometimes I see them search our carts, but you can see through the cart, and they don't search any other carts.
Do you get stripped searched each time you clean the EFVs? Yes. Twice a week. Sherwood is in the EFV's watching us and sometimes he helps us clean. So even though he is there we still get stripped searched. If it two of us working and Sherwood they will strip search us but if it is just one of us and Sherwood they don't strip search us.

I attest the above statements are true and accurate to the best of my knowledge.

Interviewee Signature: _Jasper Harris_  Date: 6-27-16

Hunter v. Rohrer, et al
DEFS 000332

Hunter v. Rohrer, et al
DEFS 000333

PLAINTIFF'S
EXHIBIT 6

20

# INTERVIEW SUMMARY

Case Number: N/A
Interviewee Name: Tremble, Eugene 716871
Investigator Name: Stella Jennings
Interview Date: 5/25/16
Interview Location: H2 CUS Office

The allegations were read to Tremble.
Are the allegations true? Yes
What specifically can you tell me happened?
I can't give you any dates, I don't remember the dates. I'm sure Hunter documented his special diet, Rohrer was making him bring a copy of the HSR, and he accused him of getting over. Rohrer could have just looked on the computer to get the information. When he brought the copy, Rohrer said "you're just playing with me", then Rohrer took him out to the hallway and Hunter got walked out of the HUB that day and suspended. Another incident we deliver jugs to the back dock. Hunter waived at an AC Diane to come out to talk to him, she came out. He didn't go in, she came out. Sgt Rohrer seen it, I don't know how he found out but I think the Sgt called her and asked what happened. The Sgt again suspended Hunter and was trying to terminate him. McCandless one day we were in the chow hall, I noticed Hunter didn't have any chips in his lunch. Hunter takes it up to McCandless and told him. McCandless lets him take another one, I told him I wouldn't lie to you, and he said yes you would. Ever since that day about 9 months later he doesn't say hello to us or even look at us. We say hello and he doesn't say anything to us or our crew.
Everything we do they just try to get us for some reason. They have been trying to get us out of the shop. They told Sherwood that he needs to recycle the whole crew, get rid of us. Officer Veat said the crew should be recycled.
Why did he say that? He has had it out for our crew for a long time. The reason was told to Sherwood. He told us that we need to be on our best behavior because they were trying to get rid of us. I haven't had any issues with Sgt Rohrer.
Have you heard any racial remarks from the Sgts? No not me. Sometimes you don't have to use words.
We go and clean the EFV's we have to get stripped searched every time we go in after we clean, we are not the only ones that go in the EFV's. There are other crews that go into the EFV's to fix lights, cabinets, general maintenance but we are the only ones that get stripped searched. The other crews that go in the EFV's don't get stripped searched.
Why do you think that is? I feel it is because we are black. There aren't any other black offenders on any other crews that go in the EFV's. We are the only ones.
Have you ever heard anyone call Sherwood's crew SherHood? Yes I've heard it.
Sumait said it. We were walking past the recycle area. On the breezeway officers yell it out. Can you name the officers? Officers on dayshift, R and M's. I've heard from some officers it's not us, its Sherwood they don't like.

Hunter v. Rohrer, et al
DEFS 000335

---

Can you name the officers? Swope, Burger (young one) He said it's not us it's Sherwood. Whatever officer code they have Sherwood doesn't follow it and that is why they don't like us. A lot of officers act funny towards Sherwood.

What do you mean by funny? Like not respecting him as far as staff or a co-worker.
What have you seen them do? Maybe if he was asking them to open up a closet or something they would make him wait or you can just tell there is something there.
Do you also think it is because you're black? No one has ever said that to your face?
No not that is reason they treat us the way they do.
What have you experienced yourself when it comes to the claim of discrimination?
What happens to one of us it happens to all of us. Veal suspended us all because we were eating in the staff lunch room. An AC gave us some food because they were getting ready to throw it away, it was Joe. We said yes so he gave us some food, French toast. We got suspended for no reason.
I got a write up for a dirty UA, I told the Sgt I don't do drugs, he just told me to go to the hearing. I beat it, he said how did you beat it, he got an attitude.
What did he do? He got a really nasty looking face and after that things started changing.
How? When we started getting a couple of more black guys on the crew. There were only two black guys at that time then Sherwood hired two more that's when I noticed a change in behavior after I got found not guilty and shortly after he hired two more black guys on the crew. It's a different kind of vibe from being checked on to a different look as if we are doing something wrong and they are trying to catch us, when all we are doing is working.
He doesn't call Sherwood he called Idso. Veal didn't ask us what we were doing. I don't think Sherwood has gone one month without someone calling him about his crew doing something wrong or petty. When the phone rings we sit and wonder ok what happened now.
We had safety glasses that were tinted and we used them to clean the windows. When we all put them on to clean the windows, Sherwood got a call to take them all from us. He got them from the safety officer. We were walking down the walkway getting ready to clean the windows in P building someone called Idso and he called Sherwood and told us we couldn't have them.
Guys are always asking us man did you guys do now.
How many black offenders do you think work in the HUB area? Can you name them all? I would say about 8 or 10. I don't know all their names. 3 that Sherwood has, George works in carpentry, recycling has 2 or 3, plumbing has one, metal shop has one I think that is it. That's just going off of what I remember from 3 months.
Is there anything else you want to tell me that I didn't ask? I was in medical and Sherwood was up there working dropping off something and he saw me and came to my room and asked me how I was doing and Officer Swope told him he couldn't talk to me and told him to leave. He was trying to talk to me to ask about the incident report he had to write it was the 15th of March. The incident was about my broken jaw that I got in the unit. I lied and said I felt at work when really I got hit but I didn't want to tell on the person that hit me so I lied and said I fell at work and Sherwood had to write an incident report about it.

Hunter v. Rohrer, et al
DEFS 000336

Exhibit 10

I attest the above statements are true and accurate to the best of my knowledge.

Interviewee Signature: _____ Date: 6-1-16

---

# Department of Corrections
## WASHINGTON STATE

# INTERVIEW ACKNOWLEDGMENT

Case Identification Number: N/A

Date of Interview: 6.27.16

Name and Title of Interviewee: Dennis Dahne
(Include Title or DOC # and Housing Assignment as applicable)

Appointing Authority: Margaret Gilbert

As an interviewee, I have been informed of the circumstances under which the Department of Corrections releases information. By signing this form, I acknowledge that I have been informed that the information I provide, including my identity, may be subject to release by the Department pursuant to applicable collective bargaining agreements, RCW 42.56 (the Public Records Act), court order, subpoena, and/or other legal authority.

I understand that information related to allegations/incidents of sexual misconduct will only be disclosed to staff when necessary for related treatment, investigation, and other security and management decisions. Breaches of confidentiality may be subject to corrective/disciplinary action.

The Department prohibits retaliation against any person because of his/her involvement in the reporting or investigation of a complaint. The Department will treat retaliation as a separate offense subject to investigative, administrative sanctions, and prosecution. Any concerns regarding retaliation are to be reported to the Appointing Authority.

☐ **Offender**
I understand that this is an active and ongoing investigation. In order to protect the integrity of the investigation, I understand that discussion of any related information is to be limited only to persons who have a need to know.

☒ **Employee/Contract Staff/Volunteer**
I have been advised that this interview is for internal administrative purposes only. I understand that refusing to cooperate with the investigation may result in me being disciplined for insubordination, up to and including termination of employment/volunteer service or the termination of my contract. I acknowledge that I am being required to fully and honestly answer all relevant and material questions relating to my duties/assignment, and that my answers cannot be used against me in any subsequent criminal proceeding.

I have been further advised that this is an active and ongoing investigation and that I may not discuss it with anyone except the Appointing Authority or a Human Resources professional, union representative, legal counsel, or person with whom I have a legally privileged relationship.

☐ **Other**
My participation in this interview is voluntary, and I understand that I am free to leave at any time. I have been advised that a witness of my choosing can accompany me during the interview at my request. Based on this information, I consent to participate in this interview.

Interviewee Signature: _____ Date: 6/27/16

Investigator Signature: _____ Date: 6.27.16