1

Honorable Benjamin H. Settle
Honorable J. Richard Creatura

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

10   DARRICK L. HUNTER,

11              Plaintiff,                    Case No. C18-5198-BHS-JRC

12   v.                                       FIRST AMENDED COMPLAINT

13   CHARLES N. ROHRER, SERGEANT;
     AND TIMOTHY J. McCANDLESS,
14   SERGEANT; AND MARGARET
     GILBERT, SUPERINTENDANT FOR THE
15   WASHINGTON STATE DEPARTMENT
     OF CORRECTIONS  IN THEIR
16   INDIVIDUAL AND OFFICIAL
     CAPACITIES;
17
                Defendants.
18

19                      **I.    INTRODUCTION**

20         This is a civil rights action authorized under 42 U.S.C., Section 1983 and 42 U.S.C.,

21   Section 2000(e) to redress the deprivation of rights secured by the United States Constitution.

22                 **II.    JURISDICTION AND VENUE**

23         This Court has legal jurisdiction under 28 U.S.C., Sections 1331 and 1343(a)(3).

24         2.1    Plaintiff Darrick L. Hunter ("Hunter" and/or "plaintiff"), seeks declaratory relief

25   under 28 U.S.C., Sections 2201 and 2202.  Also, Hunter seeks injunctive relief under 28 U.S.C.,

26   Sections 2283 and 2284.

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

1    2.2    The U.S. District Court for the Western District of Washington is an appropriate

2    venue under 28 U.S.C., Section 1391(b)(2), because it is where the events giving rise to this

3    complaint occurred.

4                                  III.    PARTIES

5    3.1    Hunter is and was at all times mentioned herein a prisoner of the State of

6    Washington in the custody of the Washington State Department of Corrections ("DOC"), and is

7    currently confined at the Coyote Ridge Corrections Center, P.O. Box 769, Connell, Washington

8    99326-0769.  At all times during the events giving rise to this Complaint, Hunter was confined at

9    the Stafford Creek Corrections Center, 191 Constantine Way, Aberdeen, Washington 98520.

10    3.2    Defendant Charles N. Rohrer ("Rohrer" and/or "defendant") was a sergeant at the

11    Stafford Creek Corrections Center, 191 Constantine Way, Aberdeen, Washington 98520, during

12    the time of the allegations in this complaint and was legally responsible for supervising custody

13    staff and prisoners.

14    3.3    Defendant Timothy J. McCandless ("McCandless" and/or "defendant") is a

15    sergeant at the Stafford Creek Corrections Center, 191 Constantine Way, Aberdeen, Washington

16    98520 and is legally responsible for supervising custody staff and prisoners.

17    3.4    Defendant Margaret Gilbert ("Gilbert" and/or "defendant") was the

18    superintendent at the Stafford Creek Corrections Center, 191 Constantine Way, Aberdeen,

19    Washington 98520, during the time of the allegations in this complaint and was legally

20    responsible for supervising and overseeing prison staff, in addition to reviewing certain inmate

21    grievances.

22                            IV.    EXHAUSTION OF REMEDIES

23    Hunter has exhausted the remedies available to him through the Prison Offender

24    Grievance Program.  Hunter also filed a notice of intent to sue with the Office of Risk

25    Management, 1500 Jefferson Street, S.E., Olympia, Washington 98504-1466.

26

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

# V.    STATEMENT OF FACTS

5.1    Hunter, a black offender, was hired into the Washington State Department of Corrections ("DOC") Class III offender work training program at the Stafford Creek Corrections Center ("SCCC") in Aberdeen, Washington.

5.2    Mark Sherwood ("Sherwood") was the manager of SCCC's inmate custodial crew in the engineering section in an area of SCCC known as the "HUB."

5.3    Sherwood hired several black inmates onto the custodian crew.  Sherwood hired Hunter,  as a member of SCCC's custodial shop.  During the time of Hunter's employment on the custodial crew, it consisted of approximately 3-5 inmates who were primarily black except, for one white inmate crew member.

5.4    Rohrer and McCandless each asked Sherwood why he was hiring black offenders onto his custodial crew on multiple occasions.  For example, on or after March 20, 2015, Hunter had witnessed Sherwood walk into the custodial shop visibly upset and agitated.  While talking on the phone, Hunter overheard Sherwood saying that "I was approached by Rohrer and McCandless and they asked me 'why are you hiring all these blacks on your crew?'"

5.5    Sherwood and his custodian crew were responsible for cleaning SCCC's Extended Family Visitation ("EFV") housing units.  SCCC used the EFVs as quarters for inmates to participate in family visits, and each inmate and family member participating in one of these visits was subject to strict security measures.  After each visit, SCCC also had safety and security procedures in place to ensure the EFV units were searched for contraband and damage before offenders are permitted inside the units.  Sherwood's custodial crew, including Hunter, were responsible for cleaning the EFVs after these visits.

5.6    Under the guise of addressing former security breaches in the EFVs, Rohrer created the strip search procedure that required Sherwood's custodial crew, including Hunter, to be subject to strip searches after each time that they cleaned the EFVs.  Rohrer created and proposed the strip search procedure to his superior, and Rohrer then disseminated and directed

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

1   his staff corrections officers to begin carrying out the strip searches of the custodial crew.

2   Rohrer himself strip searched the custodial crew on at least one occasion.  Initially, Rohrer

3   directed for the custodial crew to be strip searched after cleaning each EFV unit.  In an email

4   dated November 5, 2014, Rohrer stated that "[a]ll offenders will have to be stripped out after

5   **each** unit has been cleaned."  None of Sherwood's custodial crew members were implicated in

6   the former security breaches that Rohrer's strip search were purported to address.

7   5.7    SCCC had eight other Class III work training shops in the HUB's engineering

8   building (HVAC, electrical, bike, carpentry, lawn and garden, paint, metal and plumbing) that

9   also worked in or around the EFVs.  These crews consisted of mostly white and non-black

10  offenders.  In fact, Gilbert had concern about the racial and offender-classification makeup of the

11  offenders working in the HUB area.  Inmates also alleged that these shops were hiring only white

12  offenders, and that Rohrer and McCandless didn't want black inmates working in these

13  positions.

14  5.8    The other work training shop crews working in the EFVs were not subject to strip

15  searches after each time they worked in or around the EFVs.  These crews consisted of similar

16  supervisor to inmate ratios as Sherwood's custodial crew, and the paint crew even had up to

17  seven inmates on one occasion.  These shops also made regular and frequent visits to the EFVs.

18  But Rohrer only directed the custodial crew, consisting of primarily black inmates, including

19  Hunter, to be subjected to routine strip searches after their work in the EFVs.

20  5.9    Rohrer's directed strip searches of the custodial crew were not conducted

21  consistent with State of Washington Department of Corrections Policy DOC 420.310.  The strip

22  searches were improperly carried out in the EFV units and involved correction officers'

23  inappropriate statements and conduct during the strip searches.  For example, on at least one

24  occasion, corrections officer Roque Sumait ("Sumait") made inappropriate comments to Hunter

25  that surprised Sherwood.  Additionally, it is unclear whether the corrections officers performing

26  the searches at the direction of Rohrer properly recorded the date of the search, name of offender,

FIRST AMENDED COMPLAINT - 4
(Case No. C18-5198-BHS-JRC)

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

1   reason for the search, and names and gender of the employees conducting the search for the strip

2   searches of the custodial crew pursuant.

3       5.10    Rohrer's directed strip searches of the custodial crew were not based on Hunter's

4   or the custodian crew's actions and created an unreasonable and demeaning pattern.  On or about

5   March 19, 2015, Sherwood, SCCC custodial shop supervisor, escorted Hunter, Eugene Tremble

6   ("Tremble"), and Jasper Harris ("Harris") (all black offenders) into EFV housing unit, for the

7   purpose of cleaning and restocking the units.  Once Sherwood, Hunter, Harris and Tremble had

8   finished cleaning the EFV units, SCCC security staff subjected Hunter, Harris and Tremble to a

9   nude strip search as directed by Rohrer.

10      5.11    On or about April 16, 2015, April 23, 2015 and May 6, 2015, Sherwood's

11  custodial crew, including Hunter, was subjected to a nude strip search as directed by Rohrer once

12  they finished cleaning the EFV units.  Hunter, Harris and Tremble complained to Sherwood

13  about how SCCC staff made them stand naked and eyeballed their genitals.  SCCC security staff

14  made Hunter touch his genitals repeatedly during each search.  Hunter, Harris and Tremble told

15  Sherwood that white offenders in other shops are allowed to work in the EFV units without being

16  subjected to a strip search and that they are being treated differently because they are black.

17      5.12    On or about July 1, 2015, September 2, 2015, September 3, 2015, and

18  September 30, 2015, Hunter was subjected to a nude strip search as directed by Rohrer upon

19  cleaning the EFV units.

20      5.13    On or about January 20, 2016, Hunter, Harris and Tremble told Sherwood that he

21  should not hire anymore black offenders on his crew to prevent Rohrer and McCandless from

22  harassing other black offenders.  Sherwood told Hunter that "he was hiring people who are good

23  workers with good conduct, not because you are black."

24      5.14    Also on January 20, 2016, Hunter observed Rohrer being unprofessional with

25  Sherwood while Hunter and Sherwood were walking into U-Building.  Sherwood ignored

26  Rohrer.  That same day, Hunter was subjected to a nude strip as directed by Rohrer.

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

1    5.15    Rohrer's mistreatment of Hunter went beyond his order for the routine strip

2    searches of Hunter and the custodial crew.  On approximately January 20, 2016, Hunter went to

3    lunch around 11:30 a.m.  McCandless gave Hunter a regular lunch containing food items that

4    Hunter was allergic to.  Hunter has a severe food allergy to peanut and sunflower products and

5    Hunter's health status reports on file in DOC's computer system indicates that Hunter is to be

6    given a special diet meal.  Rohrer overheard Hunter and McCandless discussing Hunter's diet,

7    and Rohrer told Hunter that he needed to produce a copy of the health status report to obtain a

8    special diet.

9    5.16    On or about January 22, 2016, Hunter produced a copy of his health status report

10   to obtain a special diet meal, and Rohrer just laughed at Hunter.  Rohrer ordered Hunter into the

11   dining hall hallway after overhearing Hunter talk at the lunch table about Rohrer's constant

12   mistreatment of Hunter.  Rohrer suspended Hunter after Hunter had become upset when Rohrer

13   was in Hunter's face telling Hunter to "shut up" and calling him "a liar" whenever Hunter tried

14   to talk.  McCandless was also present and just smiled and laughed at Hunter.  Hunter told Rohrer

15   that he would be filing a grievance and changing job positions.  Rohrer responded by saying "I

16   don't want your black ass out here anyway," and Hunter responded that he was going to sue

17   Rohrer.

18   5.17    Also on January 22, 2016, Rohrer sent an email to Sherwood, Chris Idso ("Idso"),

19   SCCC Facility Manager, and Martin Williams recounting his experience with Hunter in the

20   dining hall, and noting that "He said that he will grieve me. . ."

21   5.18    Hunter reported the comment and incident to Mrs. Tera McEravy ("McEravy").

22   McEravy told Hunter, later that day, that Hunter was to return to work on Monday, January 25,

23   2016.

24   5.19    Rohrer and McCandless began a pattern of retaliatory conduct towards Hunter

25   after Hunter threatened to file a grievance and sue Rohrer.

26

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

1    5.20    On or about January 26, 2016, Hunter was selected for a new position in SCCC's

2    correction industries (CI) chair shop program to gain vocational skills to qualify for work upon

3    release in the chair shop industry.  Rohrer learned that Hunter was leaving custodial and

4    transferring to the CI chair shop and sent Sherwood an email falsely accusing Hunter of being

5    "out of bounds."  Rohrer labeled Hunter a "security threat," and ordered Sherwood to suspend

6    Hunter.

7    5.21    Hunter immediately reported the incident to his counselors and the facility risk

8    management crew (FRMT), and then drafted a letter to Gilbert dated January 26, 2016, for

9    redress of his grievances against Rohrer.  Hunter's letter to Gilbert recounted that he was being

10   harassed and targeted by Rohrer because of his race and described Rohrer's and McCandless'

11   questioning of Sherwood about hiring black inmates onto the custodial crew.

12   5.22    On January 29, 2016, Hunter also filed a racial discrimination grievance against

13   Rohrer and McCandless through SCCC's offender grievance program.  The FRMT refused to

14   suspend or terminate Hunter from the Class III work program, and permitted Hunter to transfer

15   from the custodial crew to SCCC's correction industries Class II vocation chair shop program.

16   On February 1, 2016, Hunter began working in the chair shop.

17   5.23    Rohrer continued to retaliate against Hunter for filing his grievances.

18   5.24    On February 9, 2019, Dahne sent an email to Rohrer recounting Hunter's

19   allegations from the incident in the dining hall relating to his food allergies, and states "He said

20   on 1/26 when you suspended him you stated it was because he was a security risk.  I can't find

21   any chronos in regard to either.  His infraction history is good and work evaluations are above

22   average.  Can you fill me in please?"

23   5.25    Also on February 9, 2016, Dennis Dahne ("Dahne") sent an email to Sherwood

24   asking "Mark, what can you tell me about this offendxers [sic] claims?"  On February 11, in

25   response, Sherwood states "[a]ll I can say to this grievance is the following [] Yes, I have been

26

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

1  asked by both Rohr [sic] and McCandless 'why am I only hiring blacks?'" [] Yes Sgt Rohr said

2  he was a 'security threat." Saying more would only be my opinion."

3      5.26    On or about April 11, 2016, Keith Morgan ("Morgan"), CI chair shop supervisor,

4  directed Hunter to report to a special visit with a DOC investigator.  Morgan gave Hunter

5  permission to take his lunch with him, because no one was sure if Hunter would return to work

6  before lunch ended.  Under personal escort and direct observation by SCCC staff (Officer Brule),

7  Hunter took his lunch with him to the interview with the DOC investigator.  Later that afternoon,

8  Hunter observed Rohrer speaking to Morgan about Hunter.  Rohrer directed Morgan to terminate

9  Hunter from the chair shop program.

10      5.27    Hunter's counselors (Robert Aleksinski ("Aleksinski") and Ryan Denzer

11  ("Denzer")) had a meeting with Hunter, the FRMT, Sherwood and the grievance coordinator.  It

12  was determined that Rohrer and Morgan were prohibited from terminating Hunter, and that

13  Hunter would be closely monitored.  Also, it was agreed that returning Hunter to Sherwood's

14  custodial crew was in Hunter's best interest to allow Sherwood direct observation and

15  supervision of Hunter.

16      5.28    On April 12, 2016, Gilbert drafted a letter in response to Hunter's letter dated

17  January 26, 2016.  Gilbert acknowledged Hunter's allegations of racial discrimination and stated

18  that she will request that Captain Frank Rivera ("Rivera") and Idso look into the matter.

19      5.29    On April 16, 2016, Hunter filled out a retaliation grievance against Rohrer and

20  Morgan.  Rohrer and Morgan were upset that Hunter had filed a racial discrimination complaint

21  against Rohrer.

22      5.30    On April 20, 2016, Rohrer sent an email to Sherwood, Denzer, Idso, and others,

23  stating "I am not sure what kind of game this offender is trying to pull but this is the guy that

24  worked for you before and was lying to staff and caught out of bounds several times in the spine

25  building."  In response, Idso wrote back to Rohrer stating, "I am willing to have the discussion,

26  but glancing at Hunter's OMNI records, I see no infractions recently or any related to his HUB

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

1    employment.  Further, I see no behavior log entries that would concern me about employing him

2    in maintenance. . .”

3         5.31    On April 28, 2016, Rivera sent Gilbert a letter regarding Rohrer and Hunter.

4    Rivera confirmed that Hunter had not been infracted since September 24, 2013.

5         5.32    On or about May 3, 2016, the grievance coordinator met with Hunter to dismiss

6    the filing and details of Hunter’s two grievances, and it was agreed that both of Hunter’s

7    grievances be assigned outside of the grievance office for investigation, monitoring, and

8    resolution by Gilbert.

9         5.33    On May 19, 2016, Gilbert appointed Stella Jennings (“Jennings”) to investigate

10   Hunter’s allegations of McCandless’ and Rohrer’s discriminatory behavior.  Gilbert did not

11   request that Jennings investigate Hunter’s alleged retaliation by either McCandless or Rohrer.

12        5.34    On May 31, 2016, Hunter recounted to Jennings that Rohrer would always have

13   the custodial crew strip searched and that they felt like they were being targeted.  Hunter

14   recounts another incident involving targeting of the primarily-black custodial crew when

15   McCandless talked to Sherwood regarding safety glasses being taken from the custodial crew.

16        5.35    On another incident of discriminatory targeting of Hunter and the custodial crew,

17   McCandless confiscated Hunter’s fingerless gloves, when other inmates had similar gloves.  On

18   yet another incident related to racial targeting, Rohrer and Idso required only the custodial crew

19   to wear high-visibility vests at all times.  And when all work crews were required to wear the

20   vests, and eventually stopped wearing them, the custodial crew was still required to wear them.

21        5.36    Sherwood expressed frustration regarding the targeting of the custodial crew and

22   noticed the inconsistent standards set for the custodial crew in comparison to other work crews,

23   and the fact that only the custodial crew was strip searched each time they worked in the EFVs.

24   When Sherwood attempted to stand up for the custodial crew when they were disciplined for

25   accepting food from a food manager, Rohrer asked him why he was sticking up for the inmates

26   and told Sherwood that he needed to “back up the blue.”

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

1    5.37    On June 1, 2016, Jennings interviewed Harris.  Harris explained to Jennings that

2    the custodial crew is always stripped out in the EFVs' bathrooms, and that the custodial crew is

3    the only crew that gets strip searched and that no other work crew is subject to the same strip

4    searches.

5    5.38    Also on June 1, 2016, Idso recounted to Jennings that the custodial crew gets strip

6    searched after they complete their work in the EFVs, that it had been occurring for about two or

7    three years, and stated that "Rohrer was always pretty hard on the custodial crews that worked in

8    the EFV's," and that the strip searches are done inside the EFVs.

9    5.39    In addition to Hunter's allegations of racial discrimination, Sherwood had

10    expressed concerns to Gilbert regarding the comments made by Rohrer and McCandless, told her

11    that only his custodial crew was strip searched every time they leave the EFVs, and that it

12    appeared that Rohrer was after Hunter.

13    5.40    When reviewing Jennings' investigation, Gilbert reviewed at least Hunter's,

14    Harris', and Idso's descriptions of the custodial crew being strip searched in the EFV area, in

15    addition to Sherwood's accusations regarding strip searches of his crew, and Rohrer's targeting

16    of Hunter.  Gilbert also reviewed evidence demonstrating that Rohrer and McCandless racially

17    discriminated and retaliated against Hunter and the custodial crew.

18    5.41    Gilbert was personally aware of a culture of racial discrimination involving the

19    staff at SCCC.

20    5.42    Gilbert was personally involved and directly participated in Rohrer and

21    McCandless' discriminatory and retaliatory conduct when she allowed Rohrer and McCandless'

22    racial discrimination and retaliation directed at Hunter to continue even after receiving Hunter's

23    January 26, 2016 letter, statements from Sherwood, and after reviewing Jennings' investigation,

24    in addition to being personally aware of racial discrimination in SCCC's staff.

25    5.43    On and between June 2, 2016 and July 13, 2016, Hunter was subjected to a nude

26    strip search at least five more times as directed by Rohrer.  In addition, Sherwood's custodial

FIRST AMENDED COMPLAINT - 10
(Case No. C18-5198-BHS-JRC)

4852-7571-4511.6

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

1    shop was searched and trashed at least four times by SCCC staff.  Hunter's, Harris', and

2    Tremble's work areas were trashed.

3         5.44    On June 24, 2016, corrections officer Neel Narayan filed an incident report

4    describing Sherwood's statement to Hunter that "oh we don't want to send you there (referring to

5    inmate Hunter #320996) because of Rohrer."

6         5.45    Four days later, on July 28, 2016, Gilbert sent McCandless and Rohrer each a

7    "Notification of Findings."  Gilbert stated that she had determined that Hunter's allegations of

8    "staff misconduct" were unfounded.  Gilbert did not send Hunter a final determination of

9    Jennings' investigation into the matter.

10        5.46    Gilbert allowed the unreasonable and demeaning strip searches to continue after

11   she learned of them from Jennings' investigation.  On October 17, 2016, Captain Frank Rivera

12   sent an email to Sherwood, Rohrer, McCandless, and others stating that "I have asked both Sgt.

13   Rohrer and Sgt. McCandless to observe the strip search process in the EFV and give me their

14   feedback on best practices . . . The goal is to ensure the crew is being strip searched 100% of the

15   time and being logged 100% of the time.  Please direct custody staff to ensure all strip searches

16   are logged.  I am not sure I am comfortable with strip searching the inmates in the EFV's . . ."

17        5.47    In addition to her duties as superintendent at SCCC, Gilbert also had a

18   responsibilities with the Washington Department of Corrections for the Prison Rape Elimination

19   Act.

20        5.48    Gilbert was personally involved and directly participated in the conduct of the

21   strip searches of Hunter and the custodial crew by allowing for the unreasonable searches to

22   continue through her subordinates Rohrer and others when she knew or should have known that

23   conducting strip searches of Hunter and the custodial crew inside the EFVs was not appropriate,

24   that strip searches should have always been recorded, and should have known about

25   inappropriate conduct during the strip searches by her subordinates, including by corrections

26   officer Sumait.

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

1    5.49    On or about October 27, 2016, Hunter contacted Gilbert through SCCC's kiosk,

2    to find out whether Hunter's grievances had been investigated and resolved, but Gilbert did not

3    respond to Hunter's kiosk message.  Hunter met with the grievance coordinator, and told him

4    that Hunter did not have a formal response by Gilbert to address the issues raised in both his

5    grievances.  Hunter requested that both his grievances be reassigned back to the grievance office

6    for further investigation and response, or that Hunter be allowed to appeal his grievances to the

7    next level.  The grievance coordinator told Hunter that there was nothing further that could be

8    done.

9    5.50    Hunter removed himself from working in any area where Rohrer, McCandless

10   and Morgan were assigned and transferred to the Class III barbershop.  Hunter remained a barber

11   until he was transferred from SCCC on July 24, 2017.

12                           **VI.     CLAIMS FOR RELIEF**

13                      **Count I – Claims Pursuant to 42 U.S.C § 1983**
14                      **Violations of the Fourteenth Amendment**

15   6.1    Hunter re-alleges each paragraph of this Complaint as if fully stated herein.

16   6.2    The actions of Rohrer and McCandless, as described more fully above, subjected

17   Hunter to racial discrimination, which is unconstitutional under the equal protection clause of the

18   Fourteenth Amendment to the United State Constitution.

19   6.3    The retaliatory actions of Rohrer and McCandless, as described more fully above,

20   were a pretext for racial discrimination against Hunter, causing Hunter to be deprived of his

21   rights under the equal protection of law clause of the Fourteenth Amendment to the United States

22   Constitution.

23   6.4    There was no valid penological justification for Rohrer's direction to staff for the

24   routine strip searches of only the primarily-black custodial crew and Hunter when leaving the

25   EFVs, when other (non-black) inmates working in the same area and with similar access to the

26   EFVs were not subjected to routine strip searches, as described more fully above, causing Hunter

FIRST AMENDED COMPLAINT - 12
(Case No. C18-5198-BHS-JRC)

4852-7571-4511.6

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

1    to be deprived of his rights under the equal protection of law clause of the Fourteenth

2    Amendment to the United States Constitution.

3          6.5    Gilbert was personally involved and directly participated in Rohrer and

4    McCandless' actions as their supervisor by failing to take corrective action after learning of

5    Rohrer and McCandless' unlawful discriminatory conduct, including Rohrer's directive for

6    unreasonable strip searches of Hunter, by creating a policy or custom fostering this unlawful

7    conduct, and by her gross negligence in supervising her subordinates at SCCC, including Rohrer

8    and McCandless, who committed unlawful discriminatory acts causing the deprivation of

9    Hunter's constitutional rights.

10         6.6    Gilbert also failed to properly respond to and resolve Hunter's grievances by

11    performing a sufficient investigation regarding his grievances against Rohrer and McCandless

12    for their conduct that was offensive to human dignity and that shocks the conscience, and so

13    violated Hunter's liberty interest to be secure in his person under due process.

14         6.7    Rohrer, McCandless, and Gilbert were acting under color of law at the time of the

15    incidents mentioned in this Complaint, and the defendants' conduct was a proximate cause of

16    injuries and damages sustained by Hunter.

17                      **Count II – Claims Pursuant to 42 U.S.C. § 1983**

18              **Violations of the First Amendment and Fourteenth Amendment**

19         6.8    Hunter re-alleges each paragraph of this Complaint as if fully stated herein.

20         6.9    The actions of Rohrer and McCandless against Hunter were done in retaliation for

21    Hunter exercising his right to the government for redress of grievances and were unconstitutional

22    under the First and Fourteenth Amendments to the United States Constitution.

23         6.10    Gilbert was personally involved and directly participated as supervisor in Rohrer

24    and McCandless' retaliatory actions by failing to take corrective action after learning of Rohrer

25    and McCandless' unlawful conduct, by creating a policy or custom fostering unlawful conduct,

26

FIRST AMENDED COMPLAINT - 13
(Case No. C18-5198-BHS-JRC)

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

1   and by her gross negligence in supervising Rohrer and McCandless at SCCC, who committed

2   unlawful acts and causing the deprivation of Hunter's constitutional rights.

3       6.11    The actions of Gilbert in failing to respond to and resolve Hunter's grievances

4   violated Hunter's right to due process of law, and is unconstitutional under the First and

5   Fourteenth Amendment to the United States Constitution.

6       6.12    Rohrer, McCandless, and Gilbert were acting under color of law at the time of the

7   incidents mentioned in this Complaint, and the defendants' conduct was a proximate cause of

8   injuries and damages sustained by Hunter.

9                           **Count III – Claims Pursuant to 42 U.S.C. § 1983**
10                          **Violations of the Fourth & Fourteenth Amendments**

11      6.13    Hunter re-alleges each paragraph of this Complaint as if fully stated herein.

12      6.14    There was no valid penological justification for the routine strip searches of the

13  primarily-black custodial crew when leaving the EFVs, including Hunter, when other

14  (non-black) inmates working in the same area and with similar access to the EFVs were not

15  subjected to routine strip searches, as described more fully above.

16      6.15    As a direct result of the express decisions and direction of Rohrer, Hunter and the

17  custodial crew were subjected unreasonable, demeaning, dehumanizing, and humiliating strip

18  searches on a routine basis.

19      6.16    Gilbert was personally involved and directly participated as supervisor in

20  Rohrer's unlawful actions by failing to take corrective action after learning of Rohrer's custodial

21  crew strip search procedure, by creating a policy or custom fostering the unlawful strip searches,

22  and by her gross negligence in supervising Rohrer at SCCC, who directed the unlawful strip

23  searches of Hunter and the custodial crew and caused the deprivation of Hunter's constitutional

24  rights.

25      6.17    Gilbert also failed to properly respond to and resolve Hunter's grievances by

26  performing a sufficient investigation of Hunter's grievances against Rohrer for his directed strip

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

1   searches of the custodial crew and Hunter that are offensive to human dignity and that shock the

2   conscience, and so violated Hunter's liberty interest to be secure in his person under due process.

3       6.18    Rohrer and Gilbert were acting under color of law at the time of the incidents

4   mentioned in this Complaint, and the defendants' conduct was a proximate cause of injuries and

5   damages sustained by Hunter.

6
7 **Count IV – Claims Pursuant to 42 U.S.C. § 1983**<br>**Violations of the Eight Amendment**

8       6.19    Hunter re-alleges each paragraph of this Complaint as if fully stated herein.

9       6.20    There was no valid penological justification for conducting strips searches of only

10   the custodial crew, including Hunter.

11       6.21    Rohrer subjected Hunter to punishment in violation of the Eighth Amendment by

12   instituting the systematic, improperly conducted, strip searches of the custodial crew and Hunter,

13   as described more fully above.

14       6.22    Rohrer directed and caused the strip searches to be conducted in a harassing

15   manner that resulted in the humiliation of Hunter, as described more fully above.

16       6.23    Rohrer had supervisory responsibility to terminate the systematic strip searches of

17   the custodial crew.  As a direct result of the express decision and direction of Rohrer who was in

18   charge of organizing and arranging the systematic strip searches of the custodian crew and

19   Hunter, Hunter was subjected to unreasonable strip searches that were dehumanizing,

20   demeaning, and humiliating.

21       6.24    Gilbert was personally involved and directly participated as supervisor in

22   Rohrer's unlawful actions by failing to take corrective action after learning of Rohrer's custodial

23   crew strip search procedure, by creating a policy or custom fostering the unlawful strip searches,

24   and by her gross negligence in supervising Rohrer at SCCC, who directed the unlawful strip

25   searches of Hunter and the custodial crew and caused the deprivation of Hunter's rights.

26

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

1       6.25    Rohrer and Gilbert were acting under color of law at the time of the incidents

2   mentioned in this Complaint, and the defendants' conduct was a proximate cause of injuries and

3   damages sustained by Hunter.

4                           **VII.   DAMAGES**

5       7.1    Hunter has suffered and continues to suffer serious mental and emotional anguish

6   in the form of shock, humiliation, withdrawal, harassment, dysphoric symptoms, and hatred.

7   Hunter lives in a constant state of fear of exposing his body to others, including staff, and in a

8   constant state of fear of being retaliated against for filing grievances to prison officials.

9       7.2    Hunter currently believes that the amount of damages sustained and claimed for

10  compensatory damages is $200,000.00 for all defendants combined and punitive damages of

11  $25,000.00 a piece for each defendant, for a total amount of $300,000.00 dollars, and any such

12  presumed, nominal or other damages as are proven at trial.

13                      **VIII.   PRAYER FOR RELIEF**

14      8.1    Wherefore, Hunter's request for relief:

15      (a)    Declare that defendants violated plaintiff's rights.

16      (b)    Award both compensatory and punitive damages.

17      (c)    Award attorney fees pursuant to 42 U.S.C. Section 1988(b).

18      (d)    Award post-judgment interest pursuant to 28 U.S.C. Section 1961.

19      (e)    Award to Hunter all costs incurred.

20      (f)    Grant other relief the Court deems proper and just.

21

22

23

24

25

26

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

1

2

DATED this 2nd day of December, 2020.

3
*/s/ Nicholas A. Valera*
NICHOLAS A. VALERA, WSBA #54220
*/s/ Brian W. Esler*

4
BRIAN W. ESLER, WSBA #22168
Miller Nash Graham & Dunn LLP

5
Pier 70 – 2801 Alaska Way Suite 300
Seattle, WA 98121

6
(206) 624-8300
nicholas.valera@millernash.com

7
brian.esler@millernash.com

8
Attorneys for Plaintiff

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

FIRST AMENDED COMPLAINT - 17
(Case No. C18-5198-BHS-JRC)

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

4852-7571-4511.6

1

2                                    **<u>CERTIFICATE OF SERVICE</u>**

3         I hereby certify that on the date below, I served via email the foregoing document to the

4 following:

5         Cassie B. vanRoojen
        Katherine Joy Faber

6         ATTORNEY GENERAL'S OFFICE (40116-OLY)
        PO BOX 40116

7         OLYMPIA, WA 98504-0116
        360-586-1445

8         Email: CassieV@atg.wa.gov
        Email: Katie.Faber@atg.wa.gov

9
                Attorneys for Defendants

10

11         I declare under penalty of perjury under the laws of the State of Washington that the

12 foregoing is true and correct.

13         DATED this 2nd day of December, 2020, at Seattle, Washington.

14
                                */s/ Kristin Martinez Clark*

15                                   Kristin Martinez Clark

16

17

18

19

20

21

22

23

24

25

26

**MILLER NASH GRAHAM & DUNN** LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121