1

2

3

4

5

6

7

8

9

10

11

12

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DARRICK L. HUNTER,

               Plaintiff,

   v.

CHARLES N. ROHRER, et al.

             Defendants.

CASE NO. C18-5198 BHS-JRC

ORDER ADOPTING REPORT
AND RECOMMENDATION

13

14

15

     This matter comes before the Court on the Report and Recommendation ("R&R")
of the Honorable J. Richard Creatura, United States Magistrate Judge, Dkt. 89, and
Defendants Charles Rohrer and Timothy McCandless's objections to the R&R, Dkt. 90.

16

## I.    FACTUAL & PROCEDURAL HISTORY

17

18

19

20

21

22

     Plaintiff Darrick Hunter brings claims arising from his incarceration at Stafford
Creek Corrections Center ("SCCC") against SCCC sergeants Rohrer and McCandless
and SCCC superintendent Defendant Margaret Gilbert.[1] Hunter alleges violations of his
rights under the Fourteenth Amendment's Equal Protection Clause, Fourteenth

[1] The parties stipulated to the dismissal of Gilbert without prejudice. Dkt. 81.

1    Amendment's Due Process Clause, First Amendment (retaliation), Fourth Amendment,

2    and Eighth Amendment. Dkt. 67. Defendants moved for summary judgment, Dkt. 72, and

3    Hunter conceded the dismissal of his Eighth Amendment and Due Process claims, Dkt.

4    82 at 24 n.10. Hunter additionally conceded his First Amendment retaliation claim

5    against McCandless. *Id.* at 17 n.7, 18 n.8. The R&R thus considered Hunter's claims for

6    violations of the Equal Protection Clause, First Amendment, and Fourth Amendment

7    against Rohrer and his claims for violations of the Equal Protection Clause and Fourth

8    Amendment against McCandless. *See* Dkt. 89 at 2.

9          Hunter alleges that Rohrer and McCandless were upset when SCCC custodial

10   crew supervisor Mark Sherwood began hiring primarily black offenders for the custodial

11   crew. Dkt. 67, ¶¶ 5.3–5.4. He further alleges that Rohrer then implemented a strip search

12   policy that targeted only the SCCC custodial crew, that Rohrer and McCandless

13   discriminated against him and the custodial crew on the basis of race, and that Rohrer

14   retaliated against him when he protested the discriminatory treatment. *See, e.g.*, *id.* ¶¶ 5.6,

15   5.16, 5.19, 5.35.

16         Defendants moved for summary judgment, arguing that Hunter had not exhausted

17   his claims and that Hunter could not establish the requisite constitutional violations. Dkt.

18   72. The R&R concluded that Hunter had exhausted his claims and that questions of

19   material fact precluded summary judgment as to the unconceded claims. Dkt. 89.

20   Defendants object to the R&R's denial of their motion for summary judgment, Dkt. 90, to

21   which Hunter responded, Dkt. 95.

22

## II.    DISCUSSION

Defendants object to the R&R's conclusion that there are questions of material fact precluding summary judgment as to Hunter's Equal Protection Claim, Fourth Amendment Claim, and Retaliation Claim against Rohrer, as well as Hunter's Equal Protection Claim against McCandless. Dkt. 90. They argue that the Court should reject the R&R, grant their motion for summary judgment in its entirety, and dismiss Hunter's claims with prejudice.

The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions. Fed. R. Civ. P. 72(b)(3).

### A.    Exhaustion

Defendants first object to the R&R's conclusion that Hunter exhausted his claim about McCandless taking his gloves and glasses and Rohrer making Hunter's custodial crew wear high visibility vests. Dkt. 90 at 1–3. In January 2016, Hunter signed a grievance stating that Defendants were harassing him based on his race. *See* Dkt. 77-6 at 17. Neither the grievance, nor any of the other grievances, specifically raises the issues of McCandless taking Hunter's gloves and glasses or Rohrer making his crew wear high visibility vests.

Although the exact timing of the gloves and glasses events is unclear, the R&R concluded that Hunter had exhausted his remedies because he had already complained of Rohrer's and McCandless's racial harassment. *See* Dkt. 89 at 19–20. Other circuits have

1  held that "prisoners need not file multiple, successive grievances raising the same issue . .

2  . if the objectionable condition is continuing[,]" although the Ninth Circuit has not

3  addressed this particular issue. *Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013)

4  (internal citations omitted). The R&R concluded that Hunter's claims against Defendants

5  in 2016 alleging racial discrimination were sufficient to put the prison officials on notice

6  of the problems he was seeking to redress and that Hunter did not need to file a new

7  grievance at the time of each alleged instance of discrimination. Dkt. 89 at 20 (citing

8  *Sapp v. Kimbrell*, 623 F.3d 813, 824 (9th Cir. 2010)).

9       Defendants object to this conclusion, arguing that the principle under *Turley* does

10  not apply to Hunter's grievances. Dkt. 90 at 1–2. The *Turley* court noted that "[s]eparate

11  complaints about particular incidents are only required if the underlying facts or the

12  complaints are different." 729 F.3d at 650. Defendants argue that, while Hunter's

13  complaints about the gloves, glasses, or vests could fall "under the racial discrimination

14  claim 'umbrella,'" these incidents were factually dissimilar from his grievance about

15  Defendants' alleged discriminatory statements.[2] Dkt. 90 at 2.

16       The Court agrees with the R&R. Viewing the evidence in the light most favorable

17  to Hunter, his complaints about Defendants' alleged racial discrimination put SCCC

18  officials on notice of Defendants' objectionable conduct. The specific disparate treatment

19  regarding gloves, glasses, or vests may differ, but the SCCC was on notice of the general

20

21       [2] Defendants additionally argue that Hunter "admits the gloves claim was unexhausted." Dkt. 90 at 2 (citing Dkt. 82 at 18 n.8). The Court disagrees with this assessment. The footnote, at most, concedes that Hunter did not grieve the gloves or glasses incident; it is not a concession

22  that the claims are unexhausted under any legal principles.

nature of Hunter's claims—that Defendants were discriminating against him on the basis of his race. *See Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009) (citing, *inter alia*, *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002)). Indeed, "once a prison has received notice of, and an opportunity to correct, a problem, the prisoner has satisfied the purpose of the exhaustion requirement." *Turley*, 729 F.3d at 650. Hunter had previously raised the issue of Defendants' racial discrimination, and SCCC officials had an opportunity to correct the problem but the discrimination continued. The Court thus agrees with the R&R that Hunter exhausted his claims for racial discrimination.

The R&R is therefore **ADOPTED** as to this issue.

**B.      Claims against McCandless**

Defendants next argue that Hunter expressly conceded "any independent claim" related to the gloves, glasses, or vests incidents, relying primarily on a footnote in Hunter's response in opposition to their motion for summary judgment. Dkt. 90 at 3. The footnote at issue states that the incidents involving McCandless's alleged confiscation of Hunter's gloves and glasses and Rohrer's requirement that Hunter's crew alone had to wear safety vests "should be considered as further evidence of Rohrer's and McCandless's animus toward, and disparate treatment of, Hunter and his black crewmates, as well as further evidence of Rohrer's retaliation against Hunter." Dkt. 81 at 18 n.8. Defendants argue that Hunter thus concedes these claims as a basis for his Equal Protection claim and that the amended complaint's Equal Protection allegations focus on the strip searches. Defendants assert that, therefore, there are no remaining claims against McCandless and that McCandless should be dismissed.

The Court disagrees with Defendants' characterization of the R&R and of Hunter's amended complaint. Hunter makes explicit references to the safety glasses incident, Dkt. 67, ¶ 5.34, and gloves incident, *id.* ¶ 5.35, which Hunter re-alleged in stating his Equal Protection claim for relief, *id.* ¶¶ 6.1–6.3. The R&R did not "manufacture claims related to the gloves, vests, and glasses" as Defendants suggest. Dkt. 90 at 3. Further, the footnote in Hunter's response does not concede these claims; rather it makes explicit that these incidents support Hunter's Equal Protection claim. The R&R properly considered Hunter's Equal Protection claim against McCandless as alleged in the amended complaint. The Court agrees with the R&R that issues of fact preclude summary judgment.

The R&R is therefore **ADOPTED** as to Hunter's claims against McCandless, and Defendants' motion for summary judgment is **DENIED** as to this issue.

## C.   Equal Protection Claim

Defendants next argue that the R&R erred in finding genuine issues of fact precluding summary judgment as to Hunter's Equal Protection strip search claim against Rohrer. They assert that the R&R made unreasonable inferences, relied on Hunter's "sham" declaration, relied on Hunter's conclusory statements, and failed to consider the uniqueness of the custodial crew. Dkt. 90 at 4.

### 1.   Similarly Situated Group

The R&R concluded that Hunter created factual issues regarding whether other prisoners who were not strip searched were similarly situated to Hunter's custodial crew in relevant aspects. Dkt. 89 at 23–24. Defendants argued that multiple factors—

1  predictability and frequency of access, scope of work, lack of direct supervision, and

2  predictability of which prisoners would be present—rendered the custodial crew unique

3  from other crews entering the Extended Family Visit ("EFV") area of the SCCC HUB

4  (who were not strip searched). The R&R concluded that Hunter created issues of material

5  fact regarding whether the factors asserted by Defendants are truly unique. For example,

6  the R&R determined that there were other regular activities performed in the EFV units

7  by other crews related to daily sanitation and garbage pickup.

8       Defendants launch several objections, which are without merit. First, they argue

9  that the R&R erred in finding a question of fact about the custodial crew's supervision

10 because Hunter stated that he was unaware that he left his supervisor's (Sherwood) line

11 of sight. But Defendants do not explain *how* the R&R erred in considering the statement.

12 They also reiterate their arguments that the R&R considered about the timing of other

13 crews entering the EFV units and reiterate that the custodial crew was unique. But

14 viewing the evidence in the light most favorable to Hunter, there are questions of fact

15 about whether the custodial crew is truly unique or whether there is a similarly situated

16 group.

17      They also argue that when "properly viewing the evidence," the Court should

18 conclude that Hunter cannot identify any similarly situated group. Dkt. 90 at 4.

19 Defendants, in part, argue that the R&R incorrectly understood the evidence they

20 provided in support of their motion. But a court must resolve any factual issues in favor

21 of the nonmoving party when the facts specifically attested by that party contradict facts

22 specifically attested by the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

253–54 (1986). The R&R's and the Court's view of the evidence submitted by the parties must be done in the light most favorable to Hunter. The Court agrees that viewing the work orders in the light most favorable to Hunter creates issues of fact as to whether Hunter has identified other, similarly situated groups that were treated differently based on race. The arguments and evidence raised in the Defendants' objections only further support the R&R's conclusion that this dispute must be resolved by a factfinder.

Finally, Defendants argue that the R&R improperly credited Hunter's "conclusory statement" in his declaration that other crews accessed the EFV units on a regular and predictable basis. Dkt. 90 at 7. They assert that his declaration is contradicted by his deposition. *See* Dkt. 30-1 at 52:1–6 ("[we] went out there all the time to for the cleaning, but [the other work crews] would go out there as needed."). They argue that a question of fact cannot be created by Hunter's affidavit contradicting his prior testimony. *See Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998 (9th Cir. 2009). But it is not Hunter's testimony or declaration alone that creates the questions of fact regarding similarly situated groups—the work orders, other SCCC documents, and Defendants' testimony (all of which the R&R considered) evidence that other crews entered the EFV regularly. Whether this regularity meets the same level of predictability Defendants assert Hunter's crew had is a question of material fact.

The Court thus agrees with the R&R that genuine issues of fact prevent summary judgment as to Hunter's Equal Protection claim regarding strip searches on the basis that Hunter has not identified a similarly situated comparison group.

1

     **2.    Racial Animus**

2

     Defendants, in the alternative, moved for summary judgment on Hunter's Equal

3

Protection claim arguing that Hunter failed to provide evidence that the strip search

4

policy was pretext for racial discrimination. Hunter argued in response that Rohrer

5

ordered strip searches of only his custodial crew, which was primarily composed of black

6

offenders, even though the facility manager, Chris Idso, requested a policy to strip search

7

all porter crews who accessed the EFV units. He also argued that Rohrer implemented the

8

strip search policy only after Sherwood began hiring black custodial crew employees.

9

     The R&R concluded that there were material issues of fact precluding summary

10

judgment, specifically as to whether "porter crews" incorporated other crews or was just

11

the custodial crew and whether and when Rohrer became aware of Sherwood's practice

12

of hiring primarily black offenders. Dkt. 89 at 25–29. In sum, the R&R reached the

13

conclusion that there are "genuine issues of material fact regarding whether Rohrer in

14

fact used the stirp search policy as pretext to harass the primarily black custodial crew."

15

*Id.* at 27.

16

     Defendants first object to the R&R's conclusion that there are questions of fact

17

about whether a "porter" describes only a custodial worker or includes workers from

18

other crews. Dkt. 90 at 8. They argue that all the evidence shows that "porters" are only

19

the custodial crew. They assert that Hunter's testimony that his understanding of the term

20

"porter" cannot create a genuine question of fact and that his understanding is blatantly

21

contradicted by the record. But Hunter's crew supervisor Sherwood testified that there

22

were unit porters separate and distinct from his custodial crew. *See* Dkt. 86-3 at 115:24–

116:17. Viewing the evidence in the light most favorable to Hunter, the Court agrees with the R&R that there are questions of fact as to what crews fell under the strip search policy and what crews were considered "porters."

Defendants also argue that the R&R erroneously concluded that Sherwood hired the first black custodian crew member, but the Court does not agree that the R&R reached such a conclusion. Defendants provide new evidence that black offenders were hired prior to Sherwood began his hiring practice. *See* Dkt. 92-1. It is unclear how this new evidence alters the R&R's analysis—rather, the new evidence only further supports the R&R's conclusion that there are questions of fact. Even if black offenders were occasionally hired prior to Sherwood becoming the custodial crew supervisor, Hunter alleges and provides evidence that the strip searches only began *after* Sherwood began hiring primarily black offenders. The Court agrees that there is a question of fact as to whether the strip searches were implemented as pretext to harass the primarily black custodial crew.

Defendants' remaining objections fair no better. They simply reiterate arguments that the R&R thoroughly considered. *Compare* Dkt. 87 at 7–8 *with* Dkt. 90 at 9–10. Objections to a R&R are not a vehicle to relitigate the same arguments carefully considered and rejected by the Magistrate Judge. *See, e.g.*, *Fix v. Hartford Life & Accident Ins. Co.*, CV 16–41–M–DLC–JCL, 2017 WL 2721168, at *1 (D. Mont. June 23, 2017) (collecting cases). The Court agrees with the R&R that there are genuine issues of fact about whether Rohrer was aware of the racial composition of the custodial crew. And as discussed above, there are genuine issues of fact about the custodial crew's

1  predictability. A factfinder must determine whether the strip searches were pretext for

2  racial discrimination.

3      Therefore, the R&R is **ADOPTED** as to these issues, and Defendants' motion for

4  summary judgment is **DENIED** as to Hunter's Equal Protection claim.

5  **D.    Fourth Amendment Claim**

6      Defendants additionally object to the R&R's recommendation that the Court deny

7  their motion as to Hunter's Fourth Amendment claim against Rohrer. Dkt. 90 at 10–11. It

8  is noteworthy that Defendants did not provide any argument in their motion for summary

9  judgment about why it was reasonable or necessary to dispense with Department of

10 Corrections strip search policies, *see* Dkt. 89 at 31, and now raise arguments and submit

11 new evidence about why the searches were reasonable. A district court has discretion to

12 consider evidence presented for the first time in a party's objections. *See United States v.*

13 *Howell*, 231 F.3d 615, 621–22 (9th Cir. 2000). The Court will consider the new

14 arguments and evidence raised by Defendants as they do not alter the Court's ultimate

15 conclusion and will not prejudice Hunter.

16     Hunter alleges that Rohrer violated his Fourth Amendment rights because there

17 was no valid penological justification for the strip search policy and it was objectionably

18 unreasonable. Dkt. 67, ¶¶ 6.14–6.15. The Fourth Amendment applies to the invasion of

19 bodily privacy in prisons. *See, e.g.*, *Bull v. City & Cty. of San Francisco*, 585 F.3d 964,

20 974–75 (9th Cir. 2010). "Whether a search is reasonable under the Fourth Amendment

21 requires a case-by-case 'balancing of the need for the particular search against the

22 invasion of personal rights that the search entails . . . .'" *Byrd v. Maricopa Cty. Sheriff's*

*Dept.*, 629 F.3d 1135, 1141 (9th Cir. 2011) (quoting *Bell v. Wolfish*, 441 U.S. 520, 559 (1979)). "The required factors for courts to consider include: (1) the scope of the particular intrusion, (2) the manner in which it is conducted, (3) the justification for initiating it, and (4) the place in which it is conducted." *Id.* (quoting *Bell*, 441 U.S. at 559 (internal quotation marks omitted)).

The R&R concluded that Hunter provided evidence "from which a fact finder could conclude that Rohrer implemented a policy of strip searching only the custodial crew, without requiring documentation or that the strip searches be conducted in the appropriate location, as a pretext for racial discrimination." Dkt. 89 at 31. Further, the R&R concluded that Hunter presented evidence creating factual disputes material to "the manner of the searches, the justifications for them, and the place in which they were conducted[.]" *Id.*

Defendants argue that the R&R conflates the material questions of fact regarding Hunter's Equal Protection claim with his Fourth Amendment claim. It is true that "[a]n action is 'reasonable' under the Fourth Amendment, regardless of the individual officer's state of mind, 'as long as the circumstances, viewed *objectively*, justify [the] action.'" *Brigham City, Utah v. Stuart*, 547 U.S. 398, 404 (2006) (quoting *Scott v. United States*, 436 U.S. 128, 138 (1978)) (second alteration and emphasis in original). But Rohrer can violate the Equal Protection clause by treating Hunter and the custodial crew differently than similarly situated individuals through targeting the strip searches only to them, and the strip search itself can violate Fourth Amendment if it is an objectively unreasonable search. The strip search can be both a pretext for racial discrimination under a subjective

1   standard and unreasonable under an objective standard. The R&R correctly applied the

2   factors laid out in *Byrd* to the facts here. *See* Dkt. 89 at 31–32.

3       Indeed, the Defendants' new arguments and evidence only further support the

4   R&R's conclusion that issues of material fact preclude summary judgment. For example,

5   Defendants argue that the R&R erred in finding that the location of the searches was

6   unreasonable because they were conducted in the EFV units. Dkt. 90 at 10. They provide

7   evidence of SCCC policy that allows for stirp searches to be conducted at other locations

8   throughout the facility if "measures are taken to ensure the privacy." Dkt. 92-2. But the

9   R&R did not conclude that the location of the search was unreasonable—rather it

10  concluded that questions of fact preclude determining that the searches did *not* violate

11  Hunter's Fourth Amendment rights. Hunter provided evidence that the strip searches did

12  not conform with SCCC policy. *See, e.g.*, Dkt. 86-4 at 57:13–58:8. Defendants' new

13  evidence does not alter the analysis. Whether the searches did in fact conform with SCCC

14  policy must be determined by a fact finder.

15      Defendants also argue that there is no evidence that Rohrer was personally

16  involved in any of the allegedly abusive strip searches. But as the R&R notes, Rohrer

17  testified that he directed his staff to start the strip searches, *see* Dkt. 86-5, at 189:15–22,

18  which creates a question of material fact as to what extent Rohrer directed searches that

19  violated SCCC and DOC policy (and Hunter's Fourth Amendment rights). In sum, the

20  R&R correctly concluded that questions of fact preclude summary judgment, and

21  Defendants' new arguments and evidence do not alter that conclusion.

22

1    Therefore, the R&R is **ADOPTED** as to this issue, and Defendants' motion for

2    summary judgment is **DENIED** as to Hunter's Fourth Amendment claim.

3    **E.    Retaliation Claim**

4         Finally, Defendants argue that the R&R erred in not recommending that the Court

5    dismiss Hunter's retaliation claim against Rohrer.

6         They first argue that Hunter has not presented evidence that retaliation was the

7    "substantial" or "motivating" factor behind Rohrer's conduct. Dkt. 90 at 11 (citing

8    *Brodheim v. Cry*, 584 F.3d 1261, 1271 (9th Cir. 2009)). Defendants are correct that, to

9    prevail on a retaliation claim, a plaintiff must show that their protected conduct was the

10   "substantial" or "motivating" favor behind the defendant's conduct. *Brodheim*, 584 F.3d

11   at 1271 (internal citations omitted). But, importantly, "[t]o show the presence of this

12   element on a motion for summary judgment, [Hunter] need only 'put forth evidence of

13   retaliatory motive, that, taken in the light most favorable to him, presents a genuine issue

14   of material fact as to [Rohrer's] intent' . . . ." *Id.* (quoting *Bruce v. Ylst*, 351 F.3d 1283,

15   1289 (9th Cir. 2003)). The R&R correctly applied this standard and correctly concluded

16   that Hunter provided sufficient evidence of a retaliatory motive.

17        Defendants additionally assert that the R&R wrongly concluded that "Rohrer's

18   asserted justifications for his actions are false" because Hunter presented evidence

19   contradicting Rohrer's justifications. Dkt. 90 at 12. The R&R did not make any findings

20   of fact about the falsity or truthfulness of the evidence submitted. *See, e.g.*, *Anderson*,

21   477 U.S. at 250 ("at the summary judgment stage the judge's function is not himself to

22   weigh the evidence and determine the truth of the matter but to determine whether there

is a genuine issue for trial"). Rather, the R&R again applied the correct retaliation summary judgment standard: "prison officials may not defeat a retaliation claim on summary judgment simply by articulating a general justification for a neutral process, when there is a genuine issue of material fact as to whether the action was taken in retaliation for the exercise of a constitutional right." *Bruce*, 351 F.3d at 1289. The Court agrees with the R&R's careful and thorough analysis that issues of material fact preclude any determination at this stage whether Rhorer's actions were justified, advanced legitimate penological goals, or were retaliatory.

Therefore, the R&R is **ADOPTED** as to this issue, and Defendants' motion for summary judgment is **DENIED** as to Hunter's First Amendment retaliation claim.

## III.   ORDER

The Court having considered the R&R, Defendants' objections, and the remaining record, does hereby find and order as follows:

(1)   The R&R is **ADOPTED**;

(2)   Defendants' motion for summary judgment, Dkt. 72 is **GRANTED in part** and **DENIED in part**;

(3)   Plaintiff's claims for violations of the Eight Amendment and Due Process against all Defendants are **DISMISSED without prejudice**, and his claims for violations of the Fourth Amendment against McCandless is **DISMISSED with prejudice**;

1   (4)   Plaintiff's claims against Defendant Margaret Gilbert are **DISMISSED**

2         **without prejudice**, and the Clerk shall terminate Gilbert as a defendant;

3         and

4   (5)   The referral to Judge Creatura is terminated, and the parties shall submit a

5         joint status report no later than September 3, 2021 regarding trial length and

6         availability.

7   Dated this 3rd day of August, 2021.

8

9

10        BENJAMIN H. SETTLE
          United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

ORDER - 16